# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-2169

Tyra K. Mitchell, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued June 15, 2011                                    Decided August 23, 2011)

*Louis L. Campbell*, of Palo Alto, California, with whom *Ronald L. Smith,* of Washington, D.C., was on the brief for the appellant.

*Brent A. Bowker*, with whom *William A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Kenneth A. Walsh*, Deputy Assistant General Counsel; and *Millicent Gompertz*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and MOORMAN, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*: The appellant, Tyra K. Mitchell, appeals through counsel a February 12, 2009, Board of Veterans' Appeals (Board) decision that denied entitlement to an initial disability rating in excess of 10% for residuals of reconstructive surgery of the anterior cruciate ligament (ACL) of the left knee. The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). The issue before the panel is whether pain, by itself, throughout a joint's range of motion constitutes a functional loss entitling the appellant to a higher disability rating under VA regulations. The Court holds that pain alone does not constitute a functional loss under VA regulations that evaluate disability based upon range-of-motion loss. But, because the Board erroneously relied upon a VA medical examination that did not adequately address whether the pain resulted in a functional loss in this case, the Court will vacate the February 12, 2009, Board decision and remand the matter for readjudication consistent with this decision.

## I. FACTS

The appellant served on active duty from October 1988 to April 1991 in the U.S. Navy, and from December 2006 to March 2007 in the U.S. Air Force Reserves. Record of Proceedings (R.) at 4, 351, 665. In June 2005, during a period of inactive duty for training, the appellant "felt something pop," her left knee "buckled," and she collapsed in pain. R. at 91, 229. A medical examination diagnosed a "[t]orn ACL and [a] torn anterior aspect of the lateral meniscus"; on August, 16, 2005, the appellant underwent reconstructive surgery to repair the tears. R. at 214, 219-20. In December 2005, the appellant submitted a claim for disability compensation for residuals of the reconstruction. R. at 350-65. A January 2006 VA compensation and pension (C&P) examination documented the appellant's complaints of "intense pain with standing, walking, and with certain movements" that affected her employment as a security guard and other daily activities. R. at 335. The examiner also noted "limited range of motion of the left knee – extension is to 0 degrees, flexion passively is to 100 degrees without pain, active flexion is to 115 degrees with pain." R at 336. The normal range of motion for the knee is from 0 degrees for extension to 140 degrees for flexion. *See* 38 C.F.R. § 4.71, Plate II (2011).

After initially denying her claim, the VA regional office (RO) granted the appellant's claim on April 21, 2006, with a disability evaluation of 10%, effective December 28, 2005. R. at 141-44, 324-30. Referencing 38 C.F.R. § 4.71a, Diagnostic Codes (DCs) 5257-5014 (R. at 143), the RO assigned a 10% disability evaluation "because [the appellant] ha[d] painful and limited motion of a major joint" (R. at 142). A 20% disability evaluation was not warranted, the decision stated, because flexion was not limited to 30 degrees or extension to 15 degrees. *Id.* The appellant filed a Notice of Disagreement in June 2006, seeking a higher disability rating. R. at 133. Another C&P examination in October 2006 found the range of motion in her left knee had decreased to 90 degrees of flexion and lacked 5 degrees of full extension; the examiner noted that "[a]ll of these motions appeared to be painful." R. at 65. The VA examiner further noted "tenderness and swelling along the lateral joint line" but also observed that "[t]he range of motion noted above is not additionally limited following repetitive use." *Id.* The RO continued the denial of the appellant's claim, and the appellant appealed to the Board. R. at 49-50, 53.

2

On February 12, 2009, the Board issued the decision currently on appeal, denying the appellant's claim for a disability evaluation in excess of 10% for residuals of reconstruction of her left knee ACL. R. at 3-14.[1] The Board first noted that the appellant received her 10% disability rating based upon evaluation under 38 C.F.R. § 4.71a, DC 5257-5014, and that DC 5014 refers to osteomalacia, which, in turn, "is to be rated on limitation of motion of affected parts, as arthritis, degenerative" under DC 5003. R. at 8.[2] The Board then evaluated the claim under 38 C.F.R. § 4.71a, DCs 5003, 5260, and 5261.[3] R. at 5-6. The Board found that the appellant's range of motion did not warrant a compensable rating under DC 5260 or DC 5261 and that 10% was the appropriate rating for painful motion under DC 5003.[4] R. at 6-9. Furthermore, the Board found that even considering functional impairment "due to such factors as pain on motion, weakened movement, excess fatigability, diminished endurance, or incoordination," an evaluation greater than 10% was not warranted. *Id.* (citing 38 C.F.R. §§ 4.10, 4.40, 4.45, and 4.59, and *DeLuca v. Brown*, 8 Vet.App. 202 (1995)). This appeal followed.

---

[1] In this decision, the Board also remanded for further Agency adjudication the appellant's disagreement with the initial assignment of a December 28, 2005, effective date. R. at 12-14. As such, that issue is not before the Court.

[2] When a condition is not listed in the VA disability schedule, such as residuals from ACL surgery in this case, "VA may undertake rating by analogy where the disability in question is analogous in terms of the functions affected, the anatomical localization, and the symptomatologies of the ailments." *Vogan v. Shinseki*, 24 Vet.App. 159, 161 (2010); *see* 38 C.F.R. § 4.20 (2011).

[3] Under DC 5260, which is based on the degree of flexion of the leg, a (maximum) 30% disability rating is permitted when the flexion is limited to 15 degrees, 20% when limited to 30 degrees, 10% when limited to 45 degrees, and 0% when limited to 60 degrees. Conversely, under DC 5261, when extension is limited to 45 degrees, it is rated at (the maximum disability rating of) 50%, a limitation to 30 degrees is rated at 40%, 20 degrees at 30%, 15 degrees at 20%, 10 degrees at 10%, and, finally, 5 degrees at 0%. DC 5003 will be discussed in detail below.

[4] At oral argument, the appellant's counsel expressed the belief that the appellant was not rated under DC 5003, but simply under DCs 5260 and 5261. This, however, was not the case. *See* R. at 9.

## II. THE PARTIES' ARGUMENTS

### A. Initial Briefing

On appeal to this Court, the appellant argued that the Board's decision must be reversed and the appellant awarded the maximum disability ratings under DCs 5260 and 5261: 30% and 50%, respectively. Appellant's Brief (Br.) at 10. The appellant contends that because she experiences pain throughout the entire range of motion of her left leg, and because that painful motion is deemed to be limited motion (even absent further limitation of range of motion), the motion of her left knee should be considered completely limited, and she should receive the disability ratings for maximum limitation under the DCs. *Id.* at 8-9. Thus, she asserts that painful motion is the equivalent of limited motion, which the appellant also refers to as "functional limitation" and "functional loss." *See id.* at 1, 8-9. For the proposition that painful motion should be considered limited motion, the appellant relies principally on the statements from *Lichtenfels v. Derwinski*, 1 Vet.App. 484 (1991), and *Hicks v. Brown*, 8 Vet.App. 417 (1995). Although the appellant recognizes that in these cases the Court originally equated painful motion with limited motion in the context of arthritis evaluations under DC 5003, she argues that the Court has since extended the principle to cases involving evaluations under other DCs. Appellant's Br. at 9.

The Secretary responds, first, that the range of motion tests performed during the C&P examinations demonstrate that the appellant's left knee motion is not limited enough to qualify for a compensable disability rating under DCs 5260 or 5261. Secretary's Br. at 7-8. Addressing the appellant's arguments, the Secretary contends that the Court's statement – that painful motion is limited motion – is confined to the context of arthritis evaluations, and the appellant has not been diagnosed with arthritis. *Id.* at 8. He also argues that the appellant misconstrues the cases she cites to support her argument that this Court has applied the principle to nonarthritis cases, or those cases are distinguishable from this one. *Id.* at 9. Next, although the appellant's initial argument is not premised on *DeLuca, supra,* the Secretary asserts that the Board complied with the case, which stands for the proposition that "functional loss due to pain must specifically note the limitation of motion and the extent of pain on motion." *Id.* at 10. Finally, the Secretary argues that reversal is inappropriate because, whatever the Court decides, there is more than one permissible view of the evidence. *Id.* at 10-11.

4

In her reply brief, the appellant challenges the Secretary's characterization of the caselaw she relies on. First, she argues that the reasoning of the cases in which the Court initially equated painful motion with limited motion is not limited to arthritis cases and that the Secretary has not adequately explained why it should be so limited. Reply Br. at 1. The appellant also contends that the Secretary's discussion of the cases that she asserts extend the principle outside of the arthritis context is incomplete and "ignor[es] the portions of their holdings focusing on painful motion." *Id.* at 1-3.

### B. Supplemental Briefing

On April 26, 2011, the Court, noting the parties' divergent concepts of what constitutes functional loss, ordered the parties to submit supplemental briefs addressing the following questions:

> Does *any* pain throughout a body part's range of motion constitute a "functional loss" that is compensable under the VA disability system, or must there be a certain threshold degree of pain (e.g., moderate pain or severe pain) in order for functional loss due to pain to arise? If functional loss must be based on some degree of pain (e.g., moderate pain or severe pain), must that degree be objectively evaluated, and if so, how?

In response, the appellant states that "any" pain throughout a body part's range of motion is not sufficient to constitute compensable, functional loss. Appellant's Supplemental (Supp.) Br. at 2-4. Rather, VA regulations establish that functional loss results when pain "reduce[s] normal excursion,[5] strength, speed, coordination, or endurance." *Id.* at 4. Moreover, according to the appellant, a subjective assertion of pain by a claimant and subjective descriptions of pain by an examiner (e.g., slight, moderate, or severe) are insufficient to constitute functional loss; pain must be objectively "'supported by adequate pathology'" and confirmed by "'visible behavior of the claimant undertaking the motion.'" *Id.* at 5, 6, 7 (quoting 38 C.F.R. § 4.40).

Thus, the appellant asserts that "[e]xcursion that causes [objectively verified] pain constitutes functional loss of motion." *Id.* at 5. Once pain is objectively established and "crosses the VA-established threshold" that denotes functional loss, the "examiner must then determine the exact point at which pain first sets in within the presumed normal range of motion for the affected joint."

---

[5] Excursion is the "movement[ ] occurring from a normal, or rest, position of a movable part in performance of a function." DORLAND'S ONLINE ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), *available at* http://www.dorlands.com/wsearch.jsp.

*Id.* at 6 (citing *Hicks*, 8 Vet.App. at 421). Thereafter, "the adjudicator then must apply the rating schedule to the facts based on the point within the arc of motion at which the veteran first experiences pain." *Id.* at 6-7. Under the appellant's view of her October 2006 VA examination, because there is objective evidence that she experienced pain throughout the range of motion, she experienced a functional loss throughout the entire range of motion.

The Secretary agrees that functional loss must be objectively supported by adequate pathology and visible behavior. Secretary's Supp. Br. at 9. He also agrees that "pain on motion does constitute functional loss that is compensable under the VA disability system." *Id.* at 8. However, in his view, compensation for such pain (whether arthritic or nonarthritic) is limited to 10% per joint when there is "no actual or compensable limitation of motion." *Id.* at 2 (citing 38 C.F.R. § 4.59), 3, 8. Otherwise, the Secretary contends, painful motion, without loss of range of motion, does not equate to a functional loss, and he categorically rejects the appellant's assertion that pain throughout the range of motion, without any limitation on range of motion, entitles her to maximum disability ratings under DCs 5260 and 5261. *Id.* at 6-7. He also argues that the appellant's position would create absurd results, in some cases permitting claimants with slight pain but no limitation of a joint's range of motion to obtain a disability rating higher than the rating assigned to a claimant with actual limitation on range of motion. *Id.* at 7-8.

## III. ANALYSIS

The VA disability rating schedule contains several provisions that relate to functional loss in the musculoskeletal system, which this Court has previously addressed; but here these must be put into a relational context.

A. Functional Loss of the Musculoskeletal System Under VA Regulations & Caselaw

"VA's rating schedule is constructed for the purpose of establishing levels of disability for compensation purposes based upon 'average impairment in earning capacity' resulting from particular injuries or diseases." *Hensley v. Brown*, 5 Vet.App. 155, 162 (1993) (quoting 38 U.S.C. § 1155); *see also* 38 C.F.R. § 4.1 (2011) ("The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations."). Because "[t]he basis of disability evaluations is the

6

ability of the body as a whole [or its parts] . . . to function under the ordinary conditions of daily life," the VA rating schedule recognizes that disability "evaluations are based upon lack of usefulness[ ] of these parts."  38 C.F.R. § 4.10 (2011).

Section 4.40 of the regulations addresses disability ratings for the musculoskeletal system, and specifically defines "functional loss":

> Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance.  It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, *supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion.* Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled.

38 C.F.R. § 4.40 (2011) (emphasis added).  The first sentence of section 4.40 describes the possible *manifestations* of functional loss: decreased or abnormal excursion, strength, speed, coordination, or endurance.  The second sentence announces the imperative that the medical examination express functional loss "with respect to all these elements."  The third sentence shifts focus and announces some of the potential *causes* of functional loss: missing bones or muscles, deformity, defective innervation, or *pain*.  Pain is therefore considered a cause, and not simply a manifestation, of functional loss:  "The functional loss . . . may be *due to* pain. . . . ." (emphasis added).  "Due to" means "caused by or ascribable to"; "because of; owing to."  NEW OXFORD AMERICAN DICTIONARY 536 (3d ed. 2010).  Thus, the plain language of the regulation is unambiguous that, although pain may cause a functional loss, pain *itself* does not constitute functional loss.

Section 4.45 expounds upon the concept of functional loss as it specifically relates to the joints.  The section begins with the declaration that: "[a]s regards the joints[,] the factors of disability reside in reductions of their normal excursion of movements in different planes."  38 C.F.R. § 4.45 (2011).  It then states that six factors are important in evaluating the disability of a joint: Less or more movement than is normal; weakened movement; excess fatigability; incoordination; and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and

7

weight-bearing. *Id.* Noticeably, the aspects of functional loss listed in § 4.40 closely parallel the factors listed in § 4.45. *Compare* 38 C.F.R. § 4.40 (listing excursion, strength, speed, coordination, and endurance), *with* 38 C.F.R. § 4.45(a)-(f) (listing extent of movement, weakened movement, fatigability, incoordination, pain on movement affecting excursion). Thus, as the Court noted in *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991), "[s]ections 4.40 and 4.45 together . . . make clear that pain must be considered capable of producing compensable disability of the joints." When the Court continued, stating that "functional loss due to pain is to be rated *at the same level* as the functional loss where flexion is impeded," *id.*, it was making the logical, if not obvious, observation that a functional loss caused by pain must be rated at the same level as if that functional loss were caused by some other factor (e.g., deformity, adhesion, atrophy, tendon-tie-up, *see* 38 C.F.R. §§ 4.40, 4.45(a)), that *actually* limited motion.

Though *Schafrath* announced this rule, the Court addressed the rule more fully and explained *how* "functional loss due to pain" should be rated and evaluated in *Deluca*. In *DeLuca*, the Court rejected the Secretary's argument that DCs based upon limitation of range of motion already "contemplate[d] the functional loss resulting from pain on undertaking motion" or subsumed the factors listed in 38 C.F.R. §§ 4.40 and 4.45. 8 Vet.App. at 205-06. The Court held that the medical examination was insufficient because the examiner failed to determine any additional functional loss resulting from pain, and, in remanding the matter, the Court stated "the medical examiner must be asked to express an opinion on whether pain could significantly limit functional ability during flare-ups or when the arm is used repeatedly over a period of time." *Id.*; *see also Cullen v. Shinseki*, 24 Vet.App. 74, 84 (2010) (describing *DeLuca*'s holding as "requir[ing] that the disabling effect of painful motion be considered when rating joint disabilities").

What the foregoing discussion suggests, then, is that pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system. Pain in, like deformity of or insufficient nerve supply to, a particular joint may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination[, or] endurance." 38 C.F.R. § 4.40.

The appellant's briefs do not argue that she sustained functional loss from her knee pain based upon a diminution of strength or endurance or coordination. And at oral argument, the appellant

8

explicitly disclaimed a theory of functional loss on any basis other than the effect of pain on her knee's range of motion, i.e., excursion. As such, the Court has no occasion to consider functional loss outside that context. *See Woehlaert v. Nicholson*, 21 Vet.App. 456, 463 (2007) ("This Court has consistently held that it will not address issues or arguments that counsel for the appellant fails to adequately develop in his or her opening brief."); *see also Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) (considering arguments not raised in opening brief to be waived). We now turn to the specific argument advanced by the appellant in support of her claim for a higher disability rating.

### B. Painful motion alone is not limited motion.

In making her initial argument, the appellant did not rely on (or even mention) *DeLuca* or any of the regulations discussed above. Rather, she asserts that she is entitled to the maximum disability ratings under the DCs 5260 and 5261 because, as she phrases it, "[t]his Court has held that[ ] 'painful motion . . . is deemed to be limited motion . . . even though there is no actual limitation of motion.'" Appellant's Br. at 8. Here, the appellant is quoting *Lichtenfels*, 1 Vet.App. at 488, and at first blush this statement would appear to support the appellant's argument. But, when one looks at DC 5003 itself and beyond the appellant's selective quotation of our cases, the Court's holding in *Lichtenfels* is narrower than the appellant suggests. Nor has she cited any other case that supports her argument.

### *1. Language and Structure of DC 5003*

The appellant was assigned a 10% disability rating under DC 5003, which evaluates degenerative arthritis and provides:

> [(1)] Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved (DC 5200 etc.). [(2)] When, however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10[% ] is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. [(3)] In the absence of limitation of motion, rate as below:
>> With X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations..............................................................................20[%]

9

> With X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups........................................................................10[%]
>
> NOTE (1): The 20[%] and 10[%] ratings based on X-ray findings, above, will not be combined with ratings based on limitation of motion.
>
> NOTE (2): The 20[%] and 10[%] ratings based on X-ray findings, above, will not be utilized in rating conditions listed under diagnostic codes 5013 to 5024, inclusive.

38 C.F.R. § 4.71a, DC 5003. Structurally, DC 5003 is composed of three parts, each of which addresses how to evaluate arthritic pain in a different situation: (1) When it results in limitation of motion that is compensable under a DC that rates according to limitation of motion; (2) when it results in limitation of motion that is noncompensable under a DC that is applicable to the joint involved; and (3) when it does not result in limitation of motion. *See Hicks,* 8 Vet.App. at 420.[6]

A claimant whose degenerative arthritis limits the range of motion of a joint or joints will be evaluated under the specific DCs applicable to the joint or joints when the limitation is compensable under those particular codes.[7] "When, *however*, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic code, a rating of 10[%] is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, *not added* under diagnostic code 5003." 38 C.F.R. § 4.71a, DC 5003 (2011) (emphasis added). "[H]owever" is an adverb "used to introduce a statement that contrasts with or seems to contradict something that has been said previously." NEW OXFORD AMERICAN DICTIONARY 846 (3d ed. 2010). In the context of DC 5003, the word "however" is used to "denote[ ] an opposition between two ideas it connects and express[ ] a mutually exclusive alternative." *Bryant v. Standard Life & Accident Ins. Co.*, 348 F.2d 649, 656 (5th Cir. 1965); *accord Styers v. Schriro*, 547 F.3d 1026, 1035 (9th Cir. 2008) ("The court's use of the conjunctive adverb 'however,' following its acknowledgment that such evidence 'could' in certain cases constitute mitigation,

---

[6] The appellant's condition was rated by analogy to osteomalacia under DC 5014; therefore, according to "NOTE (2)" of § 4.71a, DC 5003, the criteria listed in DC 5003's third part are inapplicable. Thus, only the criteria in the first and second parts are potentially relevant to this case.

[7] Whether the Board erroneously determined that the limitation of motion in the appellant's knee did not reach a compensable level under DC 5260 or DC 5261 is a question that the Court addresses below. For the purposes of this part of the analysis, it is assumed that such a determination was correct.

indicates that this was not such a case."); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1379-80 (Fed. Cir. 2003) (Schall, J., dissenting) ("[The statement] uses the word "however," suggesting that the configuration is an alternative to the configuration described in the preceding paragraph.").

In other words, a noncompensable disability under DCs such as 5260 and 5261 is a prerequisite for compensation under the second or third parts of DC 5003: only when arthritic pain does not cause limitation of motion, or causes a limitation of motion that does not rise to a compensable level, will a 10% rating under DC 5003 be appropriate.

### 2. Context of the Court's Statements in Lichtenfels and Hicks

At oral argument, as in her briefs (*see, e.g.*, Reply Br. at 1), the appellant asserted that, though the Court's statement equating painful motion to limited motion was made in the context of an evaluation of arthritis as shown by x-ray evidence under DC 5003, there is no reason to limit the statement to that context. We disagree. As a full quotation of the relevant language from *Lichtenfels* makes clear, the equivalence of painful motion with limited motion was based on the specific language and structure of DC 5003.

In interpreting DC 5003 for the first time, the Court in *Lichtenfels* stated:

> Read together, DC 5003, and § 4.59[8] thus state that *painful* motion of *a major joint or groups* caused by degenerative arthritis, where the arthritis is established by x-ray, is deemed to be limited motion and entitled to a minimum 10[%] rating, per joint, combined under DC 5003, even though there is no *actual* limitation of motion.

*Id.* at 488 (emphasis in original). Only when omitting portions from the Court's statement in *Lichtenfels* was the appellant able to formulate what might appear as a general rule applicable to DCs such as DCs 5260 and 5261. Similarly, in *Hicks* the Court stated that "DC 5003 and 38 C.F.R. § 4.59 deem painful motion of a major joint . . . to be limited motion even though a range of motion may be possible beyond the point when pain sets in." 8 Vet.App. at 421 (citing *Lichtenfels*). And the statement made by the Court in *Lichtenfels* (and quoted in *Hicks*) – that painful motion is considered limited motion – was clearly made in the context of evaluations under the second part

---

[8] In relevant part, § 4.59 recognizes that "[w]ith any form of arthritis, painful motion is an important factor of disability" and states that "[i]t is the intention [of the rating schedule] to recognize painful . . . joints, due to healed injury, as entitled to *at least the minimum* compensable rating for the joints." (emphasis added).

11

of DC 5003. *See, e.g.*, *Lichtenfels*, 1 Vet.App. at 487-88 ("Section 4.71a[, DC 5003] first provides a rating for actual (as opposed to painful) limitation of motion under DC 5200, etc. Since [the claimant] has no actual limitation of motion, this provision does not apply."); *cf. Cross v. Derwinski*, 2 Vet.App. 150, 153 (1992) ("Under . . . DC 5003 . . . , arthritis, established by x-ray, is to be rated at 10% per major joint or groups of joints affected by any limitation of motion, provided that such limitation is confirmed by satisfactory evidence of painful motion."). Thus, these statements establish a principle more specific than and quite different from the appellant's simple assertion that painful motion is deemed limited motion. The Court recognized the equivalency between painful motion and limited motion in the context of evaluations *under DC 5003*. No reference was made to other DCs and nothing was said to suggest that maximum disability ratings were appropriate compensation.

But even if the principle that "painful motion . . . is deemed to be limited motion" could reasonably be extracted from *Lichtenfels*, "general expressions must be taken in the context in which they were rendered." *Douglas v. Shinseki*, 23 Vet.App. 19, 25 (2009) (citing *Cohens v. Virginia*, 6 (Wheat.) U.S. 264, 399-400 (1821) (Marshall, C.J.) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.")). When interpreting broad judicial statements, care must be taken not to apply them too broadly or without proper examination of their context. *Id.*; *see also Patton v. West*, 12 Vet.App. 272, 280 (1999) (finding certain "categorical statements" in judicial opinions that dealt with one diagnostic situation to be "not operative" in addressing another). This is because such statements "are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." *Cohens*, 6 U.S. at 400; *cf. Lasovick v. Brown*, 6 Vet.App. 141, 149 (1994) (recognizing that language quoted from a particular opinion, "although universal in scope, does not constitute binding precedent beyond the facts there before the Court").

Now that the current case squarely presents this Court with the argument that painful motion should be deemed limited motion in the context of DCs 5260 and 5261, the Court must hold that it should not, and the appellant's reliance on the statement in *Lichtenfels* is misplaced. The Court in

12

*Lichtenfels* did equate painful motion with limited motion. 1 Vet.App. at 488. But, as already noted, the Court made this statement in the context of the second part of DC 5003 and did not apply this principle in the context of the evaluation under another DC whose evaluation criteria require limitation of motion. *See id.* at 487-88. Rather, the Court found that the claimant was entitled to a rating of 10% under part two of DC 5003, *id.*, which the appellant in this case has already received (R. at 9). Similarly, in *Hicks* the Court vacated the Board decision and remanded the matter because the Board relied upon an inadequate medical examination. *See* 8 Vet.App. at 421-22. In so doing, the Court recognized that "DC 5003 and 38 C.F.R. § 4.59 deem painful motion of a major joint or groups caused by degenerative arthritis that is established by X-ray evidence to be limited motion even though a range of motion may be possible beyond the point when pain sets in." *Id.* at 421. The appellant in that case, however, was not seeking evaluation under any DC based upon limitation of motion, and the Court certainly never referred to any in its opinion. Thus, just as in *Lichtenfel*s there is nothing to suggest that the Court in *Hicks* was considering the first part of DC 5003 or another DC when it stated that "painful motion of a major joint . . . [is deemed] to be limited motion."

### 3. Cases Outside the Context of DC 5003

It should be noted that in *Lichtenfels*, the Court never uses the phrase "functional loss" or cites 38 C.F.R. § 4.40 or § 4.45. The Court does cite these regulations in *Hicks*, but notes only that they "complement[ ]" DC 5003, 8 Vet.App. at 420-21; the Court does not rely upon them. These cases, in short, do not support the appellant's position. Nevertheless, the appellant cites two cases that, she contends, apply the principle that painful motion is limited motion in evaluations under DCs other than DC 5003. Appellant's Br. at 9; Reply Br. at 1-3. In reply to the Secretary's argument that these cases are inapposite (Secretary's Br. at 9), the appellant asserts that his "exposition" of those cases is incomplete (Reply Br. at 1-3). Upon review of the cases, however, it is clear that the appellant is the one who has misinterpreted their import.

The appellant first mentions *Arnesan v. Brown*, 8 Vet.App. 432 (1995), but she misconstrues the Court's analysis. *See* Reply Br. at 2-3. In *Arnesan*, the Board had assigned the veteran a 10% disability rating under DC 5003 after concluding that the veteran was not entitled to a compensable evaluation under DCs 5260 and 5261. 8 Vet.App. at 439. The Court remanded the matter to the Board – but did *not* reverse the decision, which is the relief requested by the appellant in this case

– for a clearer statement as to how it found the veteran's flexion of the knee was limited to (the noncompensable range of) 35 degrees. The Court noted that this degree-of-limitation number was not specified in the medical evidence and, indeed, was at odds with the range of motion stated by the medical examiner. *See id.* at 439-40. The Court also noted that on remand "the Board should consider the *effect of pain on range of motion*," citing *DeLuca*. *Arnesan*, 8 Vet.App. at 440 (emphasis added). The appellant argues that *Arnesan* requires that "pain on motion must be considered in the rating evaluation under DCs 5260 and 5261." Reply at 3. But to the extent she interprets *Arnesan* as saying that pain alone requires evaluation under these DCs, she is mistaken. The Court clearly instructed the Board to consider *the effect* of pain on range of motion, as required by 38 C.F.R. §§ 4.40 and 4.45. In no way was the Court in *Arnesan* conflating the evaluation criteria under DC 5003 with those under DCs 5260 and 5261. Rather, the Court held that the Board's analysis under DCs 5260 and 5261 — which found the veteran's limitation of motion to be noncompensable — was inadequately explained and contrary to *DeLuca*.

The appellant next relies on *Powell v. West*, 13 Vet.App. 31 (1999), but this case lends her no support either. In *Powell*, the appellant was granted a disability rating of 20% by the Board under DC 5292, which evaluated limitation of motion of the lumbar spine and provided a 10% disability rating for "[s]light" limitation, 20% for "[m]oderate," and 40% for "[s]evere." 13 Vet.App. at 33-34 (quoting 38 C.F.R. § 4.71a, DC 5292 (1998) (revised and redesignated by 68 Fed. Reg. 51,454, 51,454-56 (Aug. 24, 2003))). The Court found that the evidence supported the maximum rating, reversed the Board's decision, and remanded the matter for the assignment of a disability rating of 40%. *Id.* at 35. The appellant argues that the Court reversed the Board decision because of medical evidence that noted pain throughout the ranges of motion. Reply Br. at 3. This, the appellant asserts, was the key factor in the granting of the maximum disability rating. *See id.* ("Pain on any motion is thus properly the basis for even the highest rating for limitation of motion."). Again, the appellant misunderstands the Court's discussion.

First, the presence of pain was only one of several factors that led the Court to reverse the Board's decision. *See Powell*, 13 Vet.App. at 34 ("Therefore, due to the specific portrayal of severity provided by the . . . examinations, the absence of contradiction in the later examinations, the reduced

14

ranges of motion, and the notation of pain throughout the ranges of motion in the . . . examinations, a reversal of the May 1998 decision is appropriate, with remand to assign a 40% evaluation . . . ."). Of greater import to the Court, no doubt, were the examination reports that "twice diagnosed the veteran with [i]ntervertebral disc syndrome with *severe limitation of motion*," i.e., the precise criteria specified in the now-defunct DC 5292. *Id.* at 33 (internal quotation marks omitted; bracket and emphasis in original). Pain throughout motion, therefore, was one of the factors that supported the medical diagnosis of "severe limitation of motion," but it was not "the basis for . . . the highest rating for limitation of motion" as the appellant asserts (Reply Br. at 3).[9] Second, and more importantly, the veteran in *Powell* presented evidence that the range of motion of his spine was severely limited, as required by the relevant DC. In the present case, the appellant is not arguing that the range of motion of her knee is limited (also as required by the relevant DCs); she is merely arguing that the range of motion is painful. It may be unclear how necessary the presence of painful motion was to the *Powell* Court's decision to reverse and award the maximum disability rating, but we see no indication that the Court deemed pain alone sufficient for such a disposition.

### 4. Absurd Results of the Appellant's Argument

The Secretary argues that the appellant's argument leads to absurd results. Secretary's Supp. Br. at 7. The Court agrees. For example, the Secretary notes that under the appellant's interpretation, a claimant who experiences very slight pain throughout the range of motion of the knee would receive a 50% disability rating under DC 5260 *and* a 30% disability rating under DC 5261, whereas a claimant who experiences actual limitation of flexion to 30 degrees and limitation of extension to 20 degrees would only receive disability ratings of 30% and 20% respectively. *Id.* We have recognized the affirmative duty to avoid a literal interpretation of regulatory language that would produce "an illogical and absurd result." *Zang v. Brown*, 8 Vet.App. 246, 252-53 (1995); *see also Buie v. Shinseki*, 24 Vet.App. 242, 250 (2010) (per curiam). And when an interpretation, such as the

_____

[9] VA has since amended this DC (replacing rating criteria such as "slight" and "severe") "to ensure that [the provision] uses current medical terminology and unambiguous criteria." 68 Fed. Reg. at 51,454. The appellant's concession that such terms are subjective and impermissible under the regulations at issue in the current case (*see* Appellant's Supp. Br. at 6), renders the analysis in *Powell* even more inapplicable.

appellant's, is not compelled by the language of the regulation, is not supported by caselaw, *and* has absurd effects, it must be firmly rejected.

In sum, nothing in this Court's caselaw supports the appellant's contentions that she should be given the maximum disability ratings under DCs 5260 and 5261 simply because she experiences pain throughout the range of motion of her left knee. The appellant has attempted to put more weight on our statement in *Lichtenfels* than the language will bear, and the Secretary has persuasively argued that such an interpretation would lead to absurd results. This reaffirms the conclusion stated by the Court in part III.A, *supra*, "that pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system." Reaffirming that pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," 38 C.F.R. § 4.40, in order to constitute functional loss, the Court must determine whether the VA examination undergone by the appellant as part of her claim for a higher disability rating adequately evaluated her disability condition.

## C. Duty To Assist

The Board found that VA fulfilled its duty to assist the appellant in the development of her claim, specifically noting the C&P examinations she was provided. R. at 11. VA however does not necessarily discharge its duty to assist by conducting a medical examination; the examination must be adequate for adjudication purposes. *See Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007); *see also Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (emphasizing the Board's duty to return an inadequate examination report). Whether a medical opinion is adequate – and consequently, whether the Secretary complied with his duty to assist – are factual determinations by the Board, which the Court reviews under the "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4); *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008); *Nolen v. Gober*, 14 Vet.App. 183, 184 (2000) (per curiam order). In the present case, the Court finds that the Board's implicit finding that the October 2006 medical opinion was adequate for rating purposes and its finding that duty to assist was satisfied are clearly erroneous.

Specifically, in the context of examinations evaluating functional loss in the musculoskeletal system under DCs based upon limitation of motion, *DeLuca* stands for the proposition that when pain is associated with movement, to be adequate for rating purposes an examination must "compl[y]

with the requirements of § 4.40, and the medical examiner must be asked to express an opinion on whether pain could significantly limit functional ability during flare-ups or when the arm is used repeatedly over a period of time." 8 Vet.App. at 206. Such "determinations should, if feasible, be 'portray[ed]' . . . in terms of the degree of additional range-of-motion loss due to pain on use or during flare-ups." *Id.* (quoting § 4.40). As described below, the October 2006 examiner did not provide this information, or otherwise explain why such detail feasibly could not be determined, rendering his report inadequate for rating purposes.

The examiner found that the appellant "lacked 5 degrees of full extension and that she could flex to 90 degrees," but noted that this range of motion "[was] not additionally limited following repetitive use." R. at 65. Were there no complaints of pain on motion from the appellant, the report likely would be adequate for rating purposes. But the examiner noted twice in the physical examination results that the appellant was experiencing pain throughout the range of motion of her left knee. *Id.* ("All motions of her left knee were painful. . . . All of these motions appeared to be painful."). Although the examiner noted no additional limitation after repetitive use, the examiner made no initial finding as to the degree of range-of-motion loss due to pain on use, as required by *DeLuca*. Thus, it is unclear from the examiner's notation regarding the appellant's range of motion on flexion and extension of her leg whether and at what point during the range of motion the appellant experienced any limitation of motion that was specifically attributable to pain. It is important for the medical examiner to note this information so that the VA rating official can have a clear picture of the nature of the veteran's disability and the extent to which pain is disabling. This will allow the Board to ensure that the disabling effects of pain are properly considered when evaluating any functional loss due to pain that is attributable to the veteran's disability.

Morever, the October 2006 medical opinion is inadequate for disability rating evaluation because the examiner did not discuss whether any functional loss was attributable to pain during flareups, despite noting the appellant's assertions that her knee "does flare up approximately two to three times per month," and that "[t]he flare-ups last approximately one day" and cause her "difficulty getting around." R. at 65. When discussing the appellant's functional loss during flareups, the Board should request the examiner to provide the detail required by *DeLuca* or explain why this information could not feasibly be provided.

17

Because the examiner failed to address any range-of-motion loss specifically due to pain and any functional loss during flareups, the examination lacks sufficient detail necessary for a disability rating, and it should have been returned for the required detail to be provided, or the Board should have explained why such action was not necessary. *See Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (emphasizing the Board's duty to return an inadequate examination report "if further evidence or clarification of the evidence . . . is essential for a proper appellate decision"); 38 C.F.R. § 4.2 (2011) ("[I]f the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes."); 38 C.F.R. § 19.9 (2011) (permitting remand for further development).

Inasmuch as the October 2006 medical report relied on by the Board was inadequate for rating purposes, the Board's finding that the duty to assist was satisfied is clearly erroneous. Accordingly, remand is warranted. *Hicks*, 8 Vet.App. at 421 (holding that Board's reliance on inadequate medical examination cause for remand).

## IV. CONCLUSION

Upon consideration of the foregoing, the February 12, 2009, Board decision is VACATED and the matter is REMANDED for further adjudication consistent with this decision.