http://www.va.gov/vetapp16/Files3/1621745.txt

Citation Nr: 1621745 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 09-18 715 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina

THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for service-connected right hip bursitis with degenerative joint disease (right hip disability).

REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

Roya Bahrami, Associate Counsel

INTRODUCTION

The Veteran had active service from October 1983 to October 2007.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA), Regional Office (RO), in Winston-Salem, North Carolina.

The Veteran testified at a video conference hearing before the undersigned in September 2012; a copy of the hearing transcript is of record.

This matter was previously before the Board in July 2014 at which time it was remanded for additional development. 

In a December 2014 rating decision on remand, the RO granted service connection for pes planus, and assigned an initial 30 percent disability rating effective November 1, 2007. Thus, the issue of underlying entitlement to service connection for pes planus is no longer before the Board. Moreover, if the Veteran disagrees with the initial rating and effective date assigned for her pes planus, she has to separately appeal these "downstream" issues. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997).

In September 2015, the Board denied entitlement to a rating in excess of 10 percent for right hip bursitis with degenerative joint disease. The Veteran thereafter appealed this decision to the United States Court of Appeals for Veterans Claims (Court). A Joint Motion for Remand was filed, and on March 7, 2016, the Court issued an Order vacating the September 2015 decision and returned the case to the Board for action consistent with the Joint Motion. The case is now returned to the Board.

The Veteran's claims file has been converted into a paperless claims file via the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. All records in such files have been considered by the Board in adjudicating this matter. 

FINDING OF FACT

The Veteran's right hip disability is manifested by flexion to 60 degrees, extension to 5 degrees, abduction to 20 degrees, tenderness, pain with physical activity, and daily flare-ups.

CONCLUSION OF LAW

For the entire rating period, the criteria for a disability rating in excess of 10 percent for service-connected right hip bursitis with degenerative joint disease have not been met. 38 U.S.C.A. §§ 1155, 5103, 5107 (West 2014); 38 C.F.R. §§ 4.1-4.7, 4.10, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5003-5024 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000) (codified as amended at 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014), sets forth VA's duties to notify and assist claimants in substantiating claims for VA benefits. See 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). In order to satisfy its duty to notify the claimant under the VCAA, the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002).

For service connection claims, proper notice of what is necessary to substantiate the claim requires that the Veteran be informed of the following five elements: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 484 (2006); Quartuccio, 16 Vet. App. at 187.

The record reflects that the RO provided the Veteran with the requisite notice in October 2008, prior to the initial February 2009 rating decision. Therefore, the Board finds that VA's duty to notify the Veteran has been satisfied.

Regarding the duty to assist, the Board finds that all relevant facts have been properly developed and that all evidence necessary for equitable resolution of the issues herein decided has been obtained in accordance with 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c). All identified and available post-service treatment records have been obtained. The Veteran's right hip was medically evaluated in July 2009 and August 2014. The examination reports have been reviewed and found to be collectively adequate to make a determination on the claims. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007).

Additionally, the Veteran was afforded the opportunity to give testimony before the undersigned in September 2012. At the hearing, the undersigned identified the issue on appeal and discussed the Veteran's service history and her current complaints. The undersigned sought to identify any pertinent evidence not currently associated with the record that might have been overlooked or was outstanding that might substantiate his claim. As such, the Board finds that, consistent with Bryant v. Shinseki, 23 Vet. App. 488 (2010), the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

In light of the foregoing, the Board finds that VA's duties to notify and assist have been satisfied and, thus, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

II. Analysis

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). Any reasonable doubt regarding a degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015).

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, irrespective of whether the Veteran raised them, as well as the entire history of his disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

Generally, the Board has been directed to consider only those factors contained wholly in the rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); but see Mauerhan v. Principi, 16 Vet. App. 436 (2002) (finding it appropriate to consider factors outside the specific rating criteria in determining level of occupational and social impairment).

VA must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss in light of 38 C.F.R. § 4.40, which requires the VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) did not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. The guidance provided in DeLuca must be followed in adjudicating claims where a rating under the diagnostic codes governing limitation of motion should be considered. However, when evaluating the reduction of excursion due to pain, not all painful motion constitutes limited motion. See Mitchell v. Shinseki, 25 Vet. App. 32, 38-40 (2011). Pain on motion can only be characterized as limiting pain constituting functional loss when the evidence shows the pain actually affects some aspect of the normal working movements of the body such as excursion, strength, speed, coordination, or endurance. Id., at 37. In other words, pain may cause a functional loss, but pain, by itself, does not constitute a functional loss. Id., at 36. 

The Veteran asserts that her right hip disability, diagnosed as right hip bursitis and degenerative joint disease, warrants a disability rating in excess of 10 percent. She claims that she experiences pain on a daily basis, with limitation of motion, cracking or popping, an altered gait, difficulty climbing ladders and walking up stairs. See September 2012 Board hearing transcript.

For the entire rating period on appeal, the right hip disability was rated under 38 C.F.R. § 4.71a, Diagnostic Codes 5003-5024. A rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Id.

Here, the 10 percent disability rating was assigned for the objective notation of pain on range of motion testing. See March 2010 rating decision. The diagnostic codes that focus on limitation of motion of the hip are Diagnostic Codes 5251 and 5252. 38 C.F.R. § 4.71a. Diagnostic Code 5251 assigns a maximum 10 percent rating for thigh (hip) extension limited to 5 degrees. Diagnostic Code 5252 assigns a 10 percent rating for thigh (hip) flexion limited to 45 degrees; a 20 percent rating for thigh (hip) flexion limited to 30 degrees; a 30 percent rating for flexion limited to 20 degrees; and a 40 percent rating for flexion limited to 10 degrees. 38 C.F.R. § 4.71a; see also 38 C.F.R. § 4.71, Plate II.

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence is against a finding that the right hip disability more nearly approximated the criteria for a higher 20 percent rating.

On July 2009 VA examination, range of motion was reported as flexion to 90 degrees, extension to 10 degrees, adduction and abduction to 20 degrees, and internal and external rotation to 10 degrees. Painful motion was noted, but the examiner did not specifically note at which point painful motion began. There was no additional limitation of motion following repetitive use testing. The Veteran reported severe constant pain, rated as a 10 out of 10. She denied locking, instability or swelling. She used handrails and orthopedic pillows with poor response. Her pain affected her concentration and limited her mobility, as she had to change positions frequently.

On August 2014 VA examination, right hip range of motion was reported as: flexion to 90 degrees, with pain beginning at 60 degrees; extension to 15 degrees, with pain beginning at five degrees; abduction to 20 degrees, with pain beginning at 15 degrees; adduction to 15 degrees, with pain beginning at 10 degrees; external rotation to 25 degrees, with pain beginning at 20 degrees; and internal rotation to 20 degrees, with pain beginning at 15 degrees. Abduction was not limited such that the Veteran could not cross her legs. There was no additional limitation in range of motion of the hip and thigh following repetitive-use testing. The Veteran had localized tenderness/pain to palpation of the right hip. Muscle strength was normal. She did not have ankylosis, malunion or nonunion of femur, flail hip joint or leg length discrepancy. The Veteran reported that her pain was aggravated by walking. Flare-ups impacted the function of the hip by limiting exercise. She tried to walk two to three miles on a treadmill, but is not able to do so on consecutive days. Current treatment consisted of chiropractic adjustments and non-steroidal anti-inflammatory drugs as needed, which were helpful. She also received a steroid injection a few years prior which was helpful.

The August 2014 examiner noted that pain, weakness, fatigability or incoordination could significantly limit functional ability during flare-ups and during repeated use of the joint. However, the examiner opined that it is not possible without resorting to mere speculation to estimate either loss of range of motion or describe loss of function, because there is no conceptual or empirical basis for making such a determination without directly observing function under these conditions.

VA treatment records throughout the time period on appeal indicate complaints of right hip pain, variously rated as six to eight out of 10 in severity. A January 2013 VA physician note indicates that the Veteran had occasional pain in her hips but overall doing well; she did not like to take pain medication. 

In sum, the right hip disability has manifested symptoms and impairment including right hip flexion to 60 degrees, extension limited to 5 degrees, abduction to 15 degrees, pain aggravated by physical activity, tenderness, and flare-ups. The Board notes that, although this evidence does not include right hip range of motion measurements during a flare-up, the Board finds persuasive the August 2014 opinion stating that pain, weakness, fatigability or incoordination could significantly limit functional ability during flare-ups. Nevertheless, the Board finds that the weight of the evidence does not demonstrate that the right hip disability manifested symptoms more closely approximating limitation of flexion to 30 degrees, which is less than one-half of the demonstrated flexion to 60 degrees (when taking into consideration pain), and the criteria for a disability rating in excess of 10 percent under Diagnostic Code 5252. While there is evidence of painful motion, painful motion is already considered in the 10 percent rating assigned under Diagnostic Code 5252. See 38 C.F.R. §§ 4.40, 4.45; DeLuca. 

Additionally, the Board observes that a VA medical examination is not inadequate merely because the medical examiner states he or she cannot reach a conclusion without resort to speculation. Jones v. Shinseki, 23 Vet. App. 382 (2011). While VA has a duty to assist a Veteran by providing a medical examination in certain situations, that duty does not extend to requiring a VA physician to render an opinion beyond what may reasonably be concluded from the procurable medical evidence. In this case, the August 2014 VA examiner's report set forth all relevant findings in detail and he reviewed all available evidence. As a result, his finding that it would be speculative to offer additional degrees of limitation of motion during flare-ups does not make the report inadequate. Id.

Because the preponderance of the evidence is against finding that the symptoms and impairment more nearly approximated the criteria for a higher, 20 percent rating for a right hip disability, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3, 4.7.

As for other potentially applicable diagnostic codes pertaining to the hip, the August 2014 VA examiner specifically found that the Veteran did not have ankylosis of the right hip or flail joint or malunion of the femur which would warrant a rating under Diagnostic Codes 5250, 5254, and 5255. See 38 C.F.R. § 4.71a. Lastly, neither the lay nor medical evidence indicates the left hip disability manifested an inability to toe-out more than 15 degrees, an inability to cross the legs, or abduction lost beyond 10 degrees. Although abduction was limited to 20 degrees, this range of motion does not more nearly approximate the criteria for a separate rating under Diagnostic Code 5253. See 38 C.F.R. § 4.71a.

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established scheduler criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

In this case, the Board finds that the rating criteria considered reasonably describe the Veteran's right hip disability. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell, 25 Vet. App. 32, 37. For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. Thus, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss.

Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture as she describes it. In short, there is nothing exceptional or unusual about the Veteran's hip disability because the rating criteria reasonably describe her disability level and symptomatology. Thun, 22 Vet.App. at 115.

Finally, the Board has also considered whether a remand is necessary in order to determine whether the Veteran is entitled to a total disability rating based on individual unemployability (TDIU) due to her hip disability. Here, as the Veteran has reported being currently employed as training developer on August 2014 VA examination, a remand for such an opinion is not required in this case. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

ORDER

An initial disability rating in excess of 10 percent for service-connected right hip bursitis with degenerative joint disease is denied.

____________________________________________
DEMETRIOS G. ORFANOUDIS
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs