Citation Nr: 1708251 
Decision Date: 03/17/17 Archive Date: 04/03/17

DOCKET NO. 11-21 152 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manchester, New Hampshire


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for right knee chondromalacia.

2. Entitlement to a rating in excess of 10 percent for left knee chondromalacia.

3. Entitlement to a rating in excess of 10 percent for lateral instability associated with chondromalacia, right knee.

4. Entitlement to a rating in excess of 10 percent for lateral instability associated with chondromalacia, left knee.



REPRESENTATION

Appellant represented by: Disabled American Veterans



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

A. Adamson, Counsel


INTRODUCTION

The Veteran served on active duty from June 1968 to April 1972.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a March 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Manchester, New Hampshire, which continued the Veteran's 10 percent ratings for chondromalacia of each knee and denied service connection for bilateral hip, bilateral ankle and bilateral foot disabilities.

The Veteran testified at a hearing before the undersigned in November 2011. A transcript is of record.

The Board remanded the Veteran's claims for further development in February 2014. In April 2015, the Board again remanded the knee, hip, foot and ankle claims for additional development. Following the Board's remand development, service connection was awarded for disabilities of the hips, ankles and feet by way of a February 2016 rating decision. These issues are therefore no longer before the Board. The Board also awarded separate 10 percent ratings for left and right knee lateral instability in April 2015, and remanded the matter of whether ratings in excess of 10 percent are warranted. The ratings for both chondromalacia and lateral instability of the right and left knees remain before the Board.

The issue of entitlement to service connection for a rib fracture, including as secondary to the service-connected knee disabilities, was raised by the Veteran in May 2014, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). This issue was referred by the Board in April 2015 and an August 2015 internal memorandum recognized the need for action on this issue. However, the issue remains unadjudicated. Therefore, the Board does not have jurisdiction over it, and it is again referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2016). 

The appeal is REMANDED to the AOJ. VA will notify the Veteran if further action is required.


REMAND

The Veteran was afforded a VA knee examination in March 2016, which assessed both chondromalacia and instability.

The examiner recorded the Veteran's range of motion in the right knee to be from 0 to 110 degrees. The examiner noted that the Veteran experienced pain in flexion; that he "groaned in pain" and that there was evidence of pain with weight bearing. Similarly, the left knee range of motion ranged from 0 to 120 degrees, with notations of pain during flexion, "groaning" and evidence of pain with weight bearing. The examiner indicated the additional limitation after repetitive testing, but did not indicate at which degree of motion on either knee the pain began. The examiner merely stated that it is not feasible to provide a degree of additional loss of range of motion due to pain, "because the disturbance of function is intermittent and estimates would be speculation." This does not explain why the examiner did not describe the degree of motion at which pain manifested during the examination.

Further, the examiner reported that the examination was not being conducted during a flare up of either knee and that the examination was neither medically consistent or inconsistent with the Veteran's statements describing functional loss during flare up, but the examiner then stated that it was impossible to state whether the pain, weakness, fatigability or incoordination significantly limit functional ability with flare ups, because the Veteran was not being examined during flare up. The examiner did not explain why the Veteran's statements were not being used to assess the limitations during flare up. 

Any limitation found due to these factors, pain and limitations during flare up, must be expressed in terms of degrees of loss. The Veteran is competent to report limitations during flare-ups. See Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011) (indicating an examination report that does not address additional range of motion loss due to factors such as pain, weakened movement, excess fatigability, incoordination, or flare-ups is inadequate for rating purposes). 

In this case, the examiner seemed to confirm that there were additional limitations due to pain and during flare-up, but did not discuss the degree of motion at which pain began, and did not discuss the Veteran's reports of limitations during flare up.

For these reasons, the March 2016 examination is inadequate for rating purposes and this matter must be remanded for a new examination.

Instability was considered in the March 2016 VA examination, however, the RO did not readjudicate these issues following VA's development of the record. These issues must be remanded for such consideration. See 38 C.F.R. § 20.1304 (2016).

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a new VA examination to assess the severity of the right and left knee disabilities, to include an adequate assessment of the functional impairment caused by the knee disabilities.

The examiner must report the ranges of motion in both knees. If the Veteran experiences pain during range of motion testing, the examiner must report the degree at which the pain began. The examiner must also address whether there is additional limitation of motion due to pain, weakened movement, excess fatigability, incoordination or flare ups. Any limitation found due to these factors must be expressed in terms of degrees of loss. 

The examiner is advised that the Veteran is competent to report limitations during flare ups. 

The examiner should record the Veteran's reports of limitations, including limitation of motion, during flare ups and state whether there is any medical reason for rejecting these reports. 

If the examiner is unable to provide any requested opinion without resort to speculation, the examiner must state whether the inability to provide the legally required opinion is due to the limits of the examiner's knowledge, the limits of medical knowledge in general; or there is additional evidence which, if obtained, would permit the needed opinion to be provided.

2. If any benefit sought on appeal remains denied, issue a supplemental statement of the case, to include the issues related to left and right knee instability. Then, return the case to the Board if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).