Citation Nr: 1755111 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 13-25 714 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) and depression.

2. Entitlement to an increased disability rating for left shoulder dislocations, currently evaluated as 30 percent disabling.

3. Entitlement to an initial increased disability rating for left shoulder arthritis, currently evaluated as 20 percent disabling.


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

A. Fagan, Counsel


INTRODUCTION

The Veteran served on active duty from July 1989 to July 1993.

These matters are before the Board of Veterans' Appeals (Board) on appeal from June 2011, June 2013, and September 2013 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

This appeal was previously remanded by the Board in May 2015. In May 2016, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record. The Board then, again, remanded the current issues on appeal for additional development in September 2016.

In a June 2017 rating decision, the RO implemented the Board's June 2016 award of a higher 30 percent rating for the Veteran's left shoulder dislocations. However, as that award did not constitute a full grant of the benefit sought, and the Veteran did not otherwise express satisfaction, the increased rating issue remains in appellate status. AB v. Brown, 6 Vet. App. 35, 39 (1993)

The issue of entitlement to service connection for an acquired psychiatric disorder is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).







FINDING OF FACT

The Veteran's left shoulder disability is not manifested by fibrous union, nonunion (false flail joint), loss of head (flail shoulder), or limitation of left shoulder motion to midway between the side and shoulder level.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 30 percent for service-connected left shoulder dislocations are not met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.10, 4.71a Diagnostic Code 5202 (2017)

2. The criteria for a rating in excess of 20 percent for service-connected left shoulder arthritis are not met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.10, 4.71a Diagnostic Code 5201 (2017)


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran's left shoulder disability has been separately rated based on manifestations of recurrent dislocations and limitation of motion due to arthritis, and he contends that higher ratings are warranted for both manifestations. Following a review of the record, the Board disagrees. Parenthetically, the Board points out that the analyses below regarding higher ratings during the period on appeal exclude the period from April 10, 2013, to September 1, 2013, during which time a temporary total 100 percent rating was assigned for convalescence following an April 2013 left shoulder surgery. 38 C.F.R. § 4.30.

Turning first to dislocations, the Veteran's left shoulder disability is currently rated as 30 percent disabling under Diagnostic Code 5202 for other impairment of the humerus manifested by recurrent dislocations. 38 C.F.R. § 4.71a. Under that diagnostic code, a 30 percent rating is the maximum rating provided specific to recurrent dislocation. Nevertheless, under the same diagnostic code, higher ratings are provided for evidence of fibrous union, nonunion (false flail joint), or loss of head (flail shoulder) of the left shoulder. 38 C.F.R. § 4.71a, Diagnostic Code 5202. Here, the March 2017 VA examiner expressly found no evidence of the foregoing on examination of the Veteran, and none was otherwise shown during prior March 2011 VA examination or during ongoing VA treatment. Absent evidence of humerus impairment in the form of fibrous union, nonunion, or loss of head, a rating in excess of 30 percent is not warranted for other impairment of the left shoulder, to include recurrent dislocations. Id. 

Turning to arthritis and limitation of motion caused by the Veteran's left shoulder disability, that manifestation is currently assigned a 20 percent rating under Diagnostic Code 5201. For the major extremity, as is applicable here, see March 2011 VA Examination Report, a 20 percent rating is assigned under that code for limitation of motion of the arm at shoulder level. 38 C.F.R. § 4.71a. Following a review of the record, the Board finds that the evidence does not establish that a rating higher than the currently assigned 20 percent rating is warranted at any point during the claim period. 

In this regard, the evidence does not show limitation of left shoulder motion to midway between the side and shoulder level. 38 C.F.R. § 4.71a, Diagnostic Code 5201. Instead, March 2011 and March 2017 VA examination reports show limitation of left shoulder flexion and abduction to no worse than 80 degrees, even considering pain and repetitive use. Notably, those findings do not even more nearly approximate the criteria for a higher rating, as 80 degrees is just 10 degrees less than the 90 degrees at arm level. See 38 C.F.R. § 4.71, Plate I. The Veteran's own May 2016 Board hearing testimony and actions during that hearing also support that the Veteran can raise his left arm to nearly arm/shoulder level, albeit with some pain.

Ongoing VA treatment notes also do not support entitlement to a higher rating based on limitation of motion, as they similarly do not document limitation of left shoulder motion to midway between the side and shoulder level. On the contrary, they show that in May 2010, left shoulder range of motion was "mildly" limited, and in November 2010, full range of motion was generally noted in all extremities. Full range of motion of all extremities was similarly noted in February 2011. In September 2013, decreased abduction was described as "sl" or slight. In September 2016, the Veteran's range of motion in all extremities was "grossly full and symmetric." To the extent that limitation was noted elsewhere during treatment, such as in June 2012, it was noted simply "decreased abduction" without findings or notations to suggest limitation was limited to midway between the side and arm level. 

The Board recognizes the March 2017 finding of reduced left shoulder muscle strength (4/5) in forward flexion and abduction, as well as Veteran's reports of functional impairment and flare-ups related to his left shoulder disability. In this regard, during April 2014 VA treatment, he reported his disability was worse when working or trying to pick anything up, and during his March 2017 VA examination, he reported flare-ups with sitting (greater than 10-15 minutes), driving (greater than 1-2 minutes), prolonged standing (greater than 5 minutes), or walking greater than 25 feet), and reported he avoids things such as grasping/gripping, keyboarding and reaching. He similarly testified as to functional impairment during his May 2016 Board hearing, stating that he avoids overhead or overarm motion, including throwing a football, and that he has difficulty putting a gallon of milk in the refrigerator. However, the Board finds that the Veteran's reports regarding functional limitations are somewhat inconsistent with his reports elsewhere in the record. 

In this regard, in February 2017, the Veteran reported a recent dislocation while throwing a football, supporting that he was not avoiding that activity. He also reported that until September 2016, he normally went fishing 1 to 2 times per week, which likely required a degree of gripping/grasping, sitting and/or standing, notably multiple times a week. He further indicated that his reason for not finished was decreased interest, and not related to his left shoulder. In August 2016, he reported hobbies to include gardening in addition to fishing, which also likely required any combination of sitting, reaching, and gripping/grasping. At that time, he also reported that he used to go to the gym, but could not go anymore because of foot complications - notably, again, he did not mention his right shoulder. He also regularly reported using a computer during his ongoing VA treatment, which tends to contradict his assertion during VA examination that he avoids using a keyboard. The Board also finds significant that the Veteran maintained his employment with the US Postal Service throughout most of the period on appeal generally without complaints of interference related to his left shoulder disability, but instead unrelated physical and mental issues. Indeed, in September 2017, he reported that he was "currently off work due to feet and ankles hurting," and prior VA treatment records dating from September 2016 also show psychiatric interference.

In any event, the Board finds the objective evidence of record to be the most probative evidence of record and, here, the objective evidence simply does not support a finding that the criteria for a rating higher than 30 percent rating for recurrent dislocations under Diagnostic Code 5202 or a rating higher than 20 percent for limitation of motion under Diagnostic Code 5201 are more closely approximated at any point during the claim period. See 38 C.F.R. §§ 4.40, 4.45, 4.71a; DeLuca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Nor does the record and, in particular, the March 2017 VA examination report, support entitlement to a separate compensable rating for scarring as a result of his April 2013 surgery.

In reaching the above conclusions the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claims, that doctrine is not applicable in this case. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. at 55-57 (1990).


ORDER

A rating in excess of 30 percent for left shoulder dislocations is denied.

A rating in excess of 20 percent for left shoulder arthritis with limitation of motion is denied.


REMAND

The Board remanded the Veteran's psychiatric service connection claim in September 2016, in part, to obtain additional information about and attempt to verify his claimed stressors. However, it does not appear that any request for additional stressor information from the Veteran was requested, as instructed. Further, in a statement received in December 2016, the Veteran did provide more narrow dates for his claimed stressors, indicating that two fires occurred aboard USS Independence between July and October 1990. However, it does not appear that any attempts were made to verify the Veteran's claimed fire-related stressors based on the dates provided. To the extent that the period from July to October is a time period of more than two months, the Board notes that VA's duty to assist is not bound by the JSRRC's 60 day limitation, and therefore the AOJ should submit multiple requests to the JSRRC to cover the relevant time-window in 60 day increments. See Gagne v. McDonald, 27 Vet. App. 397 (2015). 

Given the foregoing, the Board finds that remand is necessary. If, and only if, additional credible supporting evidence of a claimed stressor is obtained, a new VA opinion should be obtained to determine whether the stressor is adequate to support a diagnosis of PTSD, and whether any current psychiatric disability is related to service.

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to provide the locations and dates, within a two-month time frame, of any incidents during service that he alleges are stressors, to include the reported fires resulting in death and the suicide by hanging on board the USS Independence. 

Attempt to verify through official channels the incidents reported by the Veteran, to include any fires occurring aboard the USS Independence from July through August 1990, and September through October 1990. If sufficient information is provided regarding any other stressors, an attempt should be made to verify it through official channels. All responses received should be documented in the claims file, and the Veteran and his representative notified of any negative response.

2. If and only if any claimed stressors are verified, refer the Veteran's claims file to a VA psychiatrist or psychologist for review and to provide a supplemental opinion. The examiner must be given full access to the Veteran's entire claims file. If the examiner determines that an examination is needed before the requested opinions can be rendered, one should be scheduled. Following a review of the claims file and examination of the Veteran, the examiner should respond to the following:

(a) Please provide diagnoses for any psychiatric disorders identified. If PTSD is diagnosed, the examiner should identify the stressors upon which the diagnosis is based. If a verified stressor is deemed NOT sufficient to support a diagnosis of PTSD, the examiner should explain why.

(b) For any psychiatric disorder diagnosed during the course of the claim (other than a personality disorder), is it at least as likely as not (50 percent probability or greater) that the disorder arose during service or is otherwise related to service? 

The examiner should also discuss the significance, if any, of the past PTSD diagnoses of record, including by a VA provider in December 2013. If the reviewer finds that PTSD was validly diagnosed during the course of the claim, he or she should identify the stressor(s) upon which that diagnosis is based.

The examiner should explain the medical basis for any conclusions reached. If it is not possible to provide an opinion without resort to speculation, the reason that is so should be explained.

3. After completing the requested actions and any additional action deemed warranted, the AOJ should readjudicate the remaining claim on appeal. If the benefit sought on appeal remains denied, the Veteran and his representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto. The case should then be returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
S. C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs