﻿Citation Nr: 18124182
Decision Date: 08/07/18 Archive Date: 08/06/18

DOCKET NO. 12-27 943
DATE: August 7, 2018
ORDER
1. Entitlement to service connection for an additional disability of the spine, other than service-connected chronic lumbosacral strain (separate low back disability) is denied.
2. Entitlement to a compensable rating for right inguinal hernia is denied.
3. Entitlement to a 20 percent rating, but no higher, for chronic lumbosacral strain from September 17, 2012 to June 14, 2017 is granted.
4. Entitlement to an increased rating in excess of 20 percent for chronic lumbosacral strain from June 14, 2017 is denied.
5. Entitlement to a 10 percent disability evaluation for multiple noncompensable service-connected disabilities under 38 C.F.R. § 3.324 prior to June 14, 2017 is denied.
6. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is denied.
FINDINGS OF FACT
1. The Veteran’s separate low back disability did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and the disability is not otherwise related to an in-service disease or injury.
2. The Veteran’s right inguinal hernia has not been recurrent or readily reducible and well supported by truss or belt.
3. From September 17, 2012, to June 14, 2017, the Veteran’s chronic lumbosacral strain is manifested by forward flexion of the thoracolumbar spine to 60 degrees but was not manifested by forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine; prior to September 17, 2012, the preponderance of the credible evidence is against a finding that chronic lumbosacral strain was manifested by painful motion of the thoracolumbar spine. 
4. From June 14, 2017, the Veteran’s chronic lumbosacral strain is not manifested by forward flexion of the thoracolumbar spine 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine.
5. The evidence of record does not support that the Veteran’s noncompensable service-connected disabilities interfered with normal employability prior to September 17, 2012; as of September 17, 2012, the issue is moot.
6. The Veteran is not precluded from securing or following a substantially gainful occupation due to his service-connected disabilities
CONCLUSIONS OF LAW
1. The criteria for service connection for a separate low back disability are not met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 1137, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a)-(b), (d), 3.307, 3.309(a).
2. The criteria for a compensable rating for right inguinal hernia have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.114 Diagnostic Code (DC) 7338.
3. The criteria for entitlement to a 20 percent rating, but no higher, for chronic lumbosacral strain from September 17, 2012, to June 14, 2017 is met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 3.655.
4. The criteria for entitlement to an increased rating in excess of 20 percent for chronic lumbosacral strain from June 14, 2017 is not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.10, 4.40, 4.45, 4.59, 4.71a, DC 5237.
5. The criteria for a 10 percent disability rating under 38 C.F.R. § 3.324 prior to June 14, 2017 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 3.324.
6. The criteria for entitlement to a TDIU have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from July 1980 to December 1982.
In the Veteran’s April 2013 VA Form 9, the Veteran requested a Board hearing. In a March 2015 correspondence, the Veteran’s representative withdrew the hearing request. Accordingly, the request for a Board hearing is deemed withdrawn. 38 C.F.R. §§ 20.702(d).
In a September 2016 decision, in relevant part, the Board denied a compensable rating for the Veteran’s service-connected right inguinal hernia and remanded the Veteran’s claims of entitlement to a compensable rating for lumbosacral strain; entitlement to a 10 percent rating based on multiple noncompensable service-connected disabilities; entitlement to service connection for additional disability of the spine; and entitlement to a TDIU rating to the AOJ for further development
In January 2017, the Veteran’s representative filed a Motion for Reconsideration of the September 2016 Board decision. In a May 2017 Board decision, the Board vacated the September 2016 Board decision. In a June 2017 letter, the Veteran was notified that because the May 2017 Board decision vacated the September 2016 Board decision, the January 2017 Motion for Reconsideration was accordingly moot. 
In the May 2017 decision, the Board remanded the claim for increase for right inguinal hernia to provide him with an examination. In the decision, the Board noted that the Veteran’s claims of entitlement to a compensable rating for lumbosacral strain; entitlement to a 10 percent rating based on multiple noncompensable service-connected disabilities; entitlement to service connection for additional disability of the spine; and entitlement to a TDIU were still pending before the AOJ. The case has since returned to the Board for further consideration.
Service Connection
Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).
Service connection may also be established under 38 C.F.R. § 3.303(b), if a chronic disease or injury is shown in service, and subsequent manifestations of the same chronic disease or injury at any later date, however remote, are shown, unless clearly attributable to intercurrent causes. Service connection may also be established under 38 C.F.R. § 3.303(b), where a disability in service is noted but is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. The continuity of symptomatology provision of 38 C.F.R. § 3.303(b) has been interpreted as an alternative to service connection only for the specific chronic diseases listed in 38 C.F.R. § 3.309(a). The Veteran currently has arthritis, which is a chronic disease under 38 C.F.R. § 3.309(a); thus, 38 C.F.R. § 3.303(b) is applicable.
Additionally, where a veteran served 90 days or more of active service, and certain chronic diseases (such as arthritis) become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1110, 1112, 1113 (2012); 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. However, where the evidence does not warrant presumptive service connection, a veteran is not precluded from establishing service connection with proof of direct causation.
When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.
1. Entitlement to service connection for an additional disability of the low back, other than service-connected chronic lumbosacral strain
The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence is against the award of service connection for a separate low back disability on a direct, secondary, or presumptive basis. The reasons follow.
The Veteran has been diagnosed with a separate low back disability, and thus there is evidence of a current disability. For example, the Veteran has been variably diagnosed with degenerative joint disease (DJD) of the lumbar spine, compression fracture of the L1 vertebra, lumbar degenerative disc disease (DDD) L5-S1, thoracic DJD, subacute or chronic compression fractures of T6, T11, T12, L1, and L2, and moderate biforaminal stenosis at T6-T7. The Veteran’s service treatment records (STRs) note complaints and treatment for his back; however, they do not show diagnoses of DJD, arthritis, spinal fractures or stenosis.
However, as to direct service incurrence, the Veteran’s claim fails on the nexus to service.
As to a nexus to service, private treatment records from October 1986 first diagnosed the Veteran with DJD and spinal stenosis. During the June 2017 VA examination the examiner noted that the Veteran was first diagnosed with the compression fracture of the L1 vertebra in 1991. These disabilities were respectively diagnosed four and nine years after service, which tends to establish that a separate low back disability did not have its onset in service. The June 2017 VA examiner opined that the Veteran’s separate low back disability was not related to service. The examiner explained that service records did not support evidence of compression fracture, and evidence of a fracture was not shown until x-rays taken after service. The examiner opined that the etiology of the compression fracture was a motor vehicle accident that occurred after service. The examiner also opined that the compression fracture was not related to the Veteran’s service-connected lumbar spine disability. With regard to the Veteran’s DJD, the examiner also opined that it was not related to service. The examiner explained that there was no indication that DJD was due to trauma, and instead it was likely due to the normal aging process. The examiner noted that the Veteran had muscle spasms; however, he opined that they were not related to service. The examiner opined that with consideration of the Veteran’s service records, the likely etiology of the muscle spasms was the Veteran’s post-service motor vehicle accident.
In a March 2018 addendum opinion, another VA examiner provided additional diagnoses and analysis. The March 2018 VA examiner opined that the Veteran’s compression fracture of L1 was not related to service because it was acquired and diagnosed nine years after service and was related to the Veteran’s vehicle accident. The March 2018 VA examiner noted a diagnosis of lumbar DDD and opined that it was not related to service, as it was diagnosed in 1999, which was 17 years after service, and tends to establish that it did not have its onset in service. The examiner also noted that a March 1983 x-ray of the spine was normal. The examiner additionally confirmed diagnoses of thoracic DJD, compression fractures of the T6, T11, T12, L1, and L2 vertebrae, and moderate bifemoral stenosis, and opined they were not related to service, because they were not diagnosed until an August 2017 MRI, approximately 35 years after service. The examiner explained that with regard to each of these conditions, the Veteran’s motor vehicle accident, age, weight, and genetics were the likely etiologies, not his period of service.
To the extent that the Veteran has implied that a separate low back disability is otherwise related to service, his allegation is outweighed by that of the July 2017 and March 2018 VA examiners, who provided the opinion that a separate low back disability was not related to service and provided rationales for the opinions.
As to secondary service connection, in the June 2017 VA examination report, the examiner concluded that the L1 compression fracture, lumbar DJD, and possible spinal stenosis could not be related to service-connected chronic lumbosacral strain, as the lumbar strain involves a muscle injury. This is evidence against a finding that a separate low back disability is caused or aggravated by the service-connected chronic lumbosacral strain. The June 2017 and March 2018 VA examiners also opined that many of the Veteran’s back diagnoses are due to alternate etiologies, which is also evidence against a finding that a separate low back disability is caused or aggravated by the service-connected chronic lumbosacral strain
As to presumptive service connection for a chronic disease, the Board finds that the Veteran did not incur an event, injury, or disease related to his current a separate low back disability in service and that a separate low back disability disorder did not manifest during service or within one year of separation from service.
Furthermore, the evidence of record does not demonstrate that the Veteran’s symptoms have been continuous since separation from service in December 1982. See 38 C.F.R. §§ 3.303(b), 3.307, 3.309(a). There were no complaints, diagnosis, or treatment for this disability for at least four years following service discharge. As mentioned above, at earliest, this disability had its onset in 1986. The absence of post-service complaints, findings, diagnosis, or treatment for approximately four years after service is one factor that tends to weigh against a finding of continuous symptoms since separation from service. The Board may weigh the absence of contemporaneous medical evidence as one factor in determining credibility of lay evidence. A prolonged period without medical complaint can be considered, along with other factors, as evidence of whether an injury or a disease was incurred in service which resulted in any chronic or persistent disability.
In sum, the Board concludes that the preponderance of the evidence of record is against the Veteran’s claim for service connection for a separate low back disability. The benefit-of-the-doubt doctrine enunciated in 38 U.S.C. § 5107(b) is not applicable, as there is no approximate balance of evidence.
Increased Rating
Disability evaluations are determined by evaluating the extent to which a Veteran’s service-connected disability adversely affects the Veteran’s ability to function under the ordinary conditions of daily life, including employment, by comparing the Veteran’s symptomatology with the criteria set forth in the Schedule for Rating Disabilities. 38 C.F.R. Part 4. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1. Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.
Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervations, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40.
Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding, see 38 C.F.R. § 4.14, do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. However, those provisions should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. 38 C.F.R. §§ 4.40, 4.45.
The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Painful motion is an important factor of joint disability, which is entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. However, the evaluation of painful motion as limited motion only applies when the limitation of motion is noncompensable under the applicable diagnostic code. Mitchell v. Shinseki, 25 Vet. App. 32 (2011).
The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided. 38 C.F.R. § 4.14. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. Id.
In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.
2. Entitlement to a compensable rating for right inguinal hernia
In an August 1984 rating decision, the Veteran was granted service connection for right inguinal hernia, and assigned a noncompensable rating effective March 30, 1984. A June 2008 rating decision continued the noncompensable rating. In the March 2010 rating decision on appeal, the noncompensable rating was once again continued.
Under DC 7338, a noncompensable evaluation is appropriate if the hernia is small, reducible, or without true hernia protrusion; or where it is not operated, but remediable. A 10 percent evaluation is warranted if a hernia is postoperative recurrent, readily reducible and well supported by truss or belt. A 30 percent evaluation is warranted for a small, postoperative recurrent hernia, or unoperated irremediable hernia that is not well-supported by truss, or not readily reducible. A maximum schedular evaluation of 60 percent is warranted for a large, postoperative recurrent hernia that is not well-supported under ordinary conditions and not readily reducible, when it is considered inoperable.
The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence is against the award of a compensable rating for right inguinal hernia. The reasons follow.
The evidence indicates that the Veteran’s right inguinal hernia is not recurrent and is not readily reducible and well supported by truss or belt, which is the criteria necessary to support a 10 percent rating. At worst, a VA examination from December 2009 stated that the Veteran’s diagnosis was status post bilateral inguinal hernia repair, but that there was no recurrent hernia. The October 2010 VA examination also noted that the Veteran’s diagnosis was status post right inguinal hernia repair, and that it was resolved. Furthermore, on multiple occasions, the Veteran has been found to not have a current right inguinal hernia. For example, VA examinations in October 2010, September 2012, and October 2017 could not detect a right inguinal hernia. Additionally, private medical records from June 2017, July 2017, October 2017, and December 2017 found that no hernia could be palpated upon examination of the inguinal canal.
Although the Veteran has been diagnosed with a ventral hernia, the October 2017 VA examiner opined that the Veteran’s service-connected right inguinal hernia did not cause and is not otherwise related to his ventral hernia.
A November 2013 VA treatment record listed the Veteran’s active problems as “bilateral inguinal hernias.” In the January 2017 Motion for Reconsideration, the Veteran’s representative contended that this constituted evidence that the Veteran’s right inguinal hernia is recurrent. However, the Board notes that the same treatment record indicates a diagnosis of an umbilical hernia, and despite the Veteran’s reported history that bilateral inguinal hernias are an active problem, and complaints regarding his right inguinal hernia, the examiner did not note a current diagnosis of an inguinal hernia. Accordingly, the Board finds that this treatment record does not support a finding of a recurrent right inguinal hernia. 
In the Motion for Reconsideration, the Veteran’s representative contends that a May 2014 VA treatment record indicated that the Veteran has a current diagnosis of a postoperative hernia, which he contends establishes the criteria for a 10 percent rating for this disability. However, the Board notes that the treatment record indicates that the Veteran was diagnosed with a postoperative ventral/umbilical hernia and not a postoperative inguinal hernia. Accordingly, the Board finds that this treatment record does not constitute evidence to satisfy the criteria for a compensable rating for right inguinal hernia.
Private medical records from April 2017 note a diagnosis of a hernia and a problem list from December 2017 indicates an “incisional hernia, without obstruction or gangrene.” Upon review of these records, the Board finds that they do not constitute evidence in support of a finding for a right inguinal hernia that is recurrent or readily reducible and well supported by truss or belt.
On multiple occasions, the Veteran has provided lay statements that his hernia is recurrent and that he has undergone numerous recent surgeries to correct his right inguinal hernia. However, the Veteran has not authorized VA to obtain records of these surgeries, and his contentions are not supported by the record. Accordingly, the Veteran’s contentions are outweighed by the probative medical evidence of record.
The Board has considered the effects of the Veteran’s symptoms, including intermittent pain and discomfort, and the Board concludes that the preponderance of the evidence is against a finding that the Veteran’s right inguinal hernia is recurrent or readily reducible and well supported by truss or belt, which is the criteria needed for a 10 percent rating.
In sum, the evidence does not show that a compensable disability rating for right inguinal hernia is warranted. As the preponderance of the evidence is against the claim for a higher rating, the benefit of the doubt doctrine is not for application, and the Veteran’s claim for an increased rating is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.
3. Entitlement to a compensable rating for chronic lumbosacral strain prior to June 14, 2017
An April 1983 rating decision granted service connection for lumbosacral strain, chronic, of unknown etiology without neurological involvement, and assigned a 20 percent rating, effective December 9, 1982. In March 1984, confirmed the 20 percent rating. An April 1986 rating decision reduced the Veteran’s rating to noncompensable, effective July 1, 1986. An April 1994 rating decision continued the noncompensable rating. In the March 2010 rating decision on appeal, the Veteran’s noncompensable rating was again continued. In a March 2018 rating decision, the Veteran’s disability rating was increased to 20 percent, effective June 14, 2017.
Limitation of motion of the thoracolumbar spine is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5237, and the General Rating Formula for Diseases and Injuries of the Spine (rating formula). In relevant part, under the rating formula, a 10 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is assigned for forward flexion of the thoracolumbar spine 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating is assigned for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, Diagnostic Code 5237.
The General Rating Formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate DC. Id. at Note (1). 
For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. Id. at Note (2). 
The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence supports the award of a 20 percent rating, but no higher, for chronic lumbosacral strain from September 17, 2012 to June 14, 2017. The reasons follow.
The evidence indicates that, at worst, the Veteran’s chronic lumbosacral strain, prior to June 14, 2017, manifested with limitation of motion, resulting in forward flexion of the thoracolumbar spine to 60 degrees, which is the criteria necessary to warrant a 20 percent rating. For example, a September 2012 VA examination found that the Veteran’s forward flexion was limited to 60 degrees and that he experienced mild thoracic kyphosis.
The Board notes that the Veteran was found to have forward flexion of the thoracolumbar spine limited to 45 degrees in a June 2009 VA examination. However, the examiner noted that the test results were inconsistent with objective medical evidence. The examiner noted that range of motion testing can be rendered inaccurate with suboptimal effort or psychological overlays. The examiner could not say the extent to which these factors affected the examination results without resorting to speculation. The examiner also noted that the Veteran was not cooperative during the examination. Accordingly, the Board finds that the test results from this examination are unreliable and affords the clinical findings in this examination report no probative value.
The Board also notes that the Veteran was found to have forward flexion of the thoracolumbar spine limited to 35 degrees in an October 2010 VA examination. However, the examiner noted that the range of motion was affected by suboptimal effort by the Veteran. Accordingly, the Board finds that the test results from this examination are unreliable and affords this examination no probative value.
After considering the lay statements by the Veteran and others, VA and private treatment records, and the September 2012 VA examination report, the evidence does not support that the Veteran’s forward flexion of the thoracolumbar spine was limited to 30 degrees or less or that he had ankylosis prior to June 14, 2017.
The Board has considered the effects of the Veteran’s symptoms, including pain, flare-ups, and functional loss, and the Board concludes that the preponderance of the evidence is against a finding of forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine, which is the criteria needed for a 40 percent rating. Examination results throughout the appeal period show that the Veteran had normal muscle strength and reflexes in his lower extremities, and had forward flexion limited to 60 degrees. 
Taking into account the evidence of record indicating the Veteran’s regular complaints of pain and other findings of functional loss, the Board finds that the evidence does not reflect that such pain and functional limitations resulted in forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine, which would be required for a finding that the Veteran was entitled to a 40 percent disability rating. Thus, a higher rating than 20 percent under the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.59, DeLuca, and Mitchell criteria is not approximated in the Veteran’s disability picture for this appeal period.
The Board has not considered the application of the Formula for Rating IVDS Based on Incapacitating Episodes to the Veteran’s symptoms, as it finds that the Veteran’s chronic lumbosacral strain is his only service-connected disability. The degenerative disc disease the Veteran has is not related to the service-connected disability.
The Board notes that VA examinations of record indicate evidence of radiculopathy of the lower extremities, however the characterization of the Veteran’s disability specifically indicates that it is “without neurological involvement.” Accordingly, consideration of additional ratings for neurological abnormalities is not warranted.
Accordingly, the evidence shows that a disability rating of 20 percent for chronic lumbosacral strain is warranted prior to June 14, 2017. 38 C.F.R. § 4.71a, DC 5237. However, as the preponderance of the evidence is against a disability rating in excess of 20 percent for chronic lumbosacral strain for this part of appeal period, the benefit-of-the-doubt rule does not apply, and the Veteran’s claim must be denied to this extent. See 38 C.F.R. § 3.102.
4. Entitlement to an increased rating in excess of 20 percent for chronic lumbosacral strain from June 14, 2017
The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence is against the award of a rating in excess of 20 percent for chronic lumbosacral strain from June 14, 2017. The reasons follow.
The evidence indicates that the Veteran’s for chronic lumbosacral strain is manifested from June 14, 2017 with pain and limitation of motion, but does not result in forward flexion of the thoracolumbar spine 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine, to warrant a 40 percent rating. At worst, the Veteran’s forward flexion was limited to 45 degrees, and no ankylosis of the spine was found, as indicated in the Veteran’s June 2017 VA examination.
The Board has considered the effects of the Veteran’s symptoms, including pain and functional loss, and the Board concludes that the preponderance of the evidence is against a finding of forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine, which is the criteria needed for a 40 percent rating. Examination results throughout this part of the appeal period show that the Veteran had reduced muscle strength and hypoactive reflexes in his lower extremities, and had forward flexion to 45 degrees.
Taking into account the evidence of record indicating the Veteran’s regular complaints of pain and other findings of functional loss, the Board finds that the evidence does not reflect that such pain and functional limitations resulted in forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine, which would be required for a finding that the Veteran was entitled to a 40 percent disability rating. Thus, a higher rating under the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, and Mitchell criteria is not approximated in the Veteran’s disability picture for this appeal period.
The Board notes that VA examinations of record indicate evidence of radiculopathy of the lower extremities, however the characterization of the Veteran’s disability specifically indicates that it is “without neurological involvement.” Accordingly, consideration of additional ratings for neurological abnormalities is not warranted.
In sum, the evidence does not show that a disability rating in excess of 20 percent for chronic lumbosacral strain from June 14, 2017 is warranted. As the preponderance of the evidence is against the claim for a higher rating, the benefit of the doubt doctrine is not for application, and the Veteran’s claim for an increased rating is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102.
5. Entitlement to a 10 percent disability evaluation for multiple noncompensable service-connected disabilities under 38 C.F.R. § 3.324 prior to June 14, 2017
Whenever a Veteran is suffering from two or more separate, permanent service-connected disabilities of such character as to clearly interfere with normal employability, even though none of the disabilities may be of compensable degree under the Rating Schedule, the rating agency is authorized to apply a 10 percent rating, but not in combination with any other rating. 38 C.F.R. § 3.324. The provisions of 38 C.F.R. § 3.324 are predicated on the existence solely of non-compensable service-connected disabilities. Once a compensable evaluation for any service-connected disability has been awarded, the applicability of 38 C.F.R. § 3.324 is rendered moot.
After a careful review of the evidence of record, the Board finds that the preponderance of the evidence is against the claim of entitlement to 10 percent disability evaluation for multiple noncompensable service-connected disabilities under 38 C.F.R. § 3.324 prior to June 14, 2017. The reasons follow.
Prior to June 14, 2017, the Veteran had noncompensable ratings for chronic lumbosacral strain; S/P excision of cyst, right neck, nonpainful, nontender, nondisfiguring; scars right external ear and right temple, residuals of laceration, nonpainful, nontender, nondisfiguring; right inguinal hernia; and scars, status post right inguinal hernia repair associated with right inguinal hernia.
Here, the preponderance of the evidence does not support that the Veteran’s noncompensable disabilities otherwise interfered with his employability. At worst, the Veteran has been restricted to sedentary nonphysical work. For example, in a September 2012 VA examination, the examiner opined that the Veteran’s service connected chronic lumbosacral strain does not prevent him from doing sedentary nonphysical work if he chooses to return to work force. The examiner also opined that the Veteran’s service-connected scar and hernia disabilities do not impact the Veteran’s ability to work. Additionally, in an October 2010 VA examination, the examiner opined that with regard to the limitations of the Veteran’s service connected disabilities, the Veteran can perform gainful employment if he chooses. 
Based on the foregoing, the Board finds that the record does not support that the Veteran’s noncompensable service-connected disabilities interfered with normal employability at any point in the appeal period. Therefore, the Board denies a 10 percent under 38 C.F.R. § 3.324 prior to June 14, 2017.
TDIU
A TDIU rating may be warranted when a Veteran demonstrates the inability to secure or follow a substantially gainful occupation due solely to impairment resulting from service-connected disabilities. See 38 C.F.R. § 4.16(a) (2016). Minimum disability rating percentages must be shown for the service-connected disabilities, alone or in combination, to qualify for consideration for a TDIU award under § 4.16(a). If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability rendering a combined rating of 70 percent or more. Id.
When a veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16(a), an extraschedular rating may never nevertheless be warranted where the veteran is unemployable due to a service-connected disability. 38 C.F.R. § 4.16(b). Should the Board discern a plausible basis for an extraschedular TDIU, it must refer the matter to the Director of Compensation Service for an initial decision before the Board may decide the issue.
The question of unemployability or the veteran’s ability or inability to engage in substantial gainful activity, must be examined in a practical manner. The crux of the matter rests upon whether a particular job is realistically within the capabilities, both physical and mental, of the appellant.
Marginal employment shall not be considered substantially gainful employment and generally shall be deemed to exist when a veteran’s earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold.
The Board shall consider the nature of the employment and the reason for any termination. 38 C.F.R. § 4.16(a). The central inquiry is “whether the veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19.
The record must reflect some factor that takes the case outside the norm with respect to a similar level of disability under the rating schedule. 38 C.F.R. §§ 4.1, 4.15. The fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether the Veteran can perform the physical and mental acts required by employment, not whether he can find employment.
6. Entitlement to a TDIU rating
The Veteran does not meet the minimum disability rating percentage threshold for consideration of schedular TDIU. 38 C.F.R. § 4.16(a).
The Veteran has noncompensable ratings for S/P excision of cyst, right neck, nonpainful, nontender, nondisfiguring; scars right external ear and right temple, residuals of laceration, nonpainful, nontender, nondisfiguring; right inguinal hernia; and scars, status post right inguinal hernia repair associated with right inguinal hernia. The Veteran has a 20 percent rating for chronic lumbosacral strain, for a total combined rating of 20 percent. Thus, the Veteran does not have a disability rated at least 60 percent, nor does he have at least one disability rated at least 40 percent with an additional disability that creates a combined evaluation of at least 70 percent.
Nevertheless, when a veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16(a), an extraschedular rating is for consideration where the veteran is unemployable due to a service-connected disability. 38 C.F.R. § 4.16(b).
The Veteran attended community college from Spring 1990 to Spring 1991, although he contends that he stopped attending school due to complications from his service-connected disabilities. The Veteran also stated he completed a half year of college. The Veteran contends in his February 2010 VA Form 21-8940 that he last worked at some point in either 1984 or 1985. However, Social Security Administration (SSA) records from September 2005 show that the Veteran stated he stopped working in December 1995. In another record, the Veteran claimed that he stopped working in June 1995. According to SSA records and lay statements from the Veteran’s friends, the Veteran worked as a dishwasher 1995 and was previously a well-known professional musician. Accordingly, the Board assigns no probative value to the Veteran’s statement that he last worked in either 1984 or 1985.
The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence is against a finding that he is unable to secure or follow a substantially gainful occupation due to his service-connected disabilities.
At worst, the Veteran has been restricted to sedentary nonphysical work. For example, in an October 2017 VA examination for the Veteran’s hernia disability, the examiner stated that the Veteran must avoid strain or his hernia could reoccur. In a September 2012 VA examination, the examiner opined that the Veteran’s service connected chronic lumbosacral strain does not prevent him from doing sedentary nonphysical work if he chooses to return to work force. Although VA examiners have opined that the Veteran is restricted to sedentary work, they have not opined that the Veteran is precluded from securing or following a substantially gainful occupation due to his service-connected disabilities.
SSA records from December 2010 show that the Veteran attributes his inability to work, in part to a non-service connected heart disability. SSA records from May 2013 show that the Veteran is frequently able to carry 10 pounds, occasionally able to carry 20 pounds, could sit for six hours in an eight-hour work day with normal breaks, and could stand for six hours in an eight-hour work day with normal breaks. This evidence tends to weigh against a finding that the Veteran is precluded from securing or following a substantially gainful occupation due to his service-connected disabilities.
The Board has considered the lay statements submitted by the Veteran and others, however to the extent that these lay statements contend that the Veteran is unable to work due to his service-connected disabilities, the contentions are outweighed by the probative medical evidence of record.
Remaining VA and private medical records do not support a finding that the Veteran is unable to secure and follow a substantially gainful employment due solely to his service-connected disabilities. The record ultimately reflects the Veteran is capable of sedentary employment, subject to limitations that are not outside the bounds of those adequately contemplated by schedular criteria.
In light of the foregoing, the Board finds the evidence to preponderate against a claim for a TDIU, and that referral to the Director of Compensation Service for extraschedular consideration of entitlement to a TDIU is not warranted. As such, the benefit of the doubt doctrine is inapplicable, and the claim must be denied.
 
A. P. SIMPSON
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD R. Husain, Associate Counsel