﻿Citation Nr: AXXXXXXXX
Decision Date: 06/29/20 Archive Date: 06/29/20

DOCKET NO. 190111-1940
DATE: June 29, 2020

ORDER

Entitlement to a rating in excess of 10 percent for right knee retropatellar pain syndrome is denied.

Entitlement to a rating in excess of 10 percent for left knee retropatellar pain syndrome with degenerative changes is denied.

Entitlement to a compensable rating for right knee limitation of extension is denied.

Entitlement to a compensable rating for left knee limitation of extension is denied.

Entitlement to a total disability rating based on individual unemployability (TDIU) is granted. 

Entitlement to an effective date prior to December 11, 2014 for the grant of service connection for lumbar strain has been withdrawn. 

Entitlement to an effective date prior to December 11, 2014 for the grant of service connection for right knee limitation of extension has been withdrawn.

Entitlement to an effective date prior to December 11, 2014 for the grant of service connection for left knee limitation of extension has been withdrawn.

REMANDED

Entitlement to a rating in excess of 20 percent for a lumbar spine disability prior to April 4, 2018 is remanded.

Entitlement to a rating in excess of 40 percent for a lumbar spine disability from April 4, 2018 is remanded.

FINDINGS OF FACT

1. For the entire appeal period, the Veteran’s right knee retropatellar pain syndrome manifested in no worse than painful flexion limited to 90 degrees. 

2. For the entire appeal period, the Veteran’s left knee retropatellar pain syndrome manifested in no worse than painful flexion limited to 80 degrees. 

3. For the entire appeal period, the Veteran’s right knee limitation of extension manifested in no worse than painful extension limited to 5 degrees.

4. For the entire appeal period, the Veteran’s right left limitation of extension manifested in no worse than painful extension limited to 5 degrees.

5. The evidence is sufficient to show that the Veteran is unable to secure and follow a substantially gainful occupation due to his service-connected disabilities.

6. Prior to the promulgation of a decision in the appeal, the Veteran indicated that he was withdrawing her appeal of entitlement to effective date prior to December 11, 2014 for the grant of service connection for lumbar strain; there is no question of fact or law remaining before the Board in this matter. 

7. Prior to the promulgation of a decision in the appeal, the Veteran indicated that he was withdrawing her appeal of entitlement to effective date prior to December 11, 2014 for the grant of service connection for right knee limitation of extension; there is no question of fact or law remaining before the Board in this matter.

8. Prior to the promulgation of a decision in the appeal, the Veteran indicated that he was withdrawing her appeal of entitlement to effective date prior to December 11, 2014 for the grant of service connection for left knee limitation of extension; there is no question of fact or law remaining before the Board in this matter

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for right knee retropatellar pain syndrome have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.10, 4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, DC 5260.

2. The criteria for a rating in excess of 10 percent for left knee retropatellar pain syndrome with degenerative changes have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.10, 4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, DC 5260.

3. The criteria for a compensable rating for right knee limitation of extension have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.10, 4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, DC 5261.

4. The criteria for a compensable rating for left knee limitation of extension have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.10, 4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, DC 5261.

5. The criteria for entitlement to TDIU have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.314, 3.321, 3.340, 4.16. 

6. The criteria for withdrawal of entitlement to an effective date prior to December 11, 2014 for the grant of service connection for lumbar strain by the appellant (or his or her authorized representative) have been met. 38 U.S.C. § 7105; 38 C.F.R. § 20.205.

7. The criteria for withdrawal of entitlement to an effective date prior to December 11, 2014 for the grant of service connection for right knee extension by the appellant (or his or her authorized representative) have been met. 38 U.S.C. § 7105; 38 C.F.R. § 20.205.

8. The criteria for withdrawal of entitlement to an effective date prior to December 11, 2014 for the grant of service connection for left knee extension by the appellant (or his or her authorized representative) have been met. 38 U.S.C. § 7105; 38 C.F.R. § 20.205.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty from April 2001 to September 2001.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review.

The Board notes that the rating decision on appeal was issued in March 2015. In June 2018, the Veteran elected the modernized review system and selected Higher Level Review. 38 C.F.R. § 19.2(d). A November 2018 rating decision continued the denial of the Veteran’s claims. The Veteran timely appealed to the Board and selected the Hearing Lane. A hearing was held on September 30, 2019. 

Increased Rating

Disability evaluations are determined by comparing a Veteran’s symptoms with criteria set forth in VA’s Schedule for Rating Disabilities, which are based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings applies under a diagnostic code, the higher of the two evaluations is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. However, § 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran is presumed to be seeking the maximum possible evaluation. AB v. Brown, 6 Vet. App. 35 (1993). Separate ratings can be assigned for separate periods of time based on the facts found – a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999).

In determining the degree of limitation of motion, the provisions of 38 C.F.R. § 4.40 concerning lack of normal endurance, functional loss due to pain, and pain on use and during flare-ups; the provisions of 38 C.F.R. § 4.45 concerning weakened movement, excess fatigability, and incoordination; and the provisions of 38 C.F.R. § 4.10 concerning the effects of the disability on the veteran's ordinary activity are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

The provisions of 38 C.F.R. § 4.40 state that the disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. According to this regulation, it is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to these elements. In addition, the regulations state that functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the veteran undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40.

The provisions of 38 C.F.R. § 4.45 state that when evaluating the joints, inquiry will be directed as to whether there is less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement.

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Painful motion is an important factor of joint disability, which is entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. However, the evaluation of painful motion as limited motion only applies when the limitation of motion is noncompensable under the applicable diagnostic code. Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

1. Entitlement to a rating in excess of 10 percent for right knee retropatellar pain syndrome.

The Veteran’s right knee retropatellar pain syndrome is currently rated 10 percent disabling under DC 5260. Under DC 5260, a noncompensable rating will be assigned for limitation of flexion of the leg to 60 degrees; a 10 percent rating will be assigned for limitation of flexion of the leg to 45 degrees; a 20 percent rating will be assigned for limitation of flexion of the leg to 30 degrees; and a 30 percent rating will be assigned for limitation of flexion of the leg to 15 degrees. See 38 C.F.R. § 4.71a, DC 5260. 

Normal range of motion of the knee is to zero degrees extension and to 140 degrees flexion. See 38 C.F.R. § 4.71a, Plate II. However, where the Veteran shows noncompensable limitation of motion, but painful motion and functional impairment are evident, the Veteran is entitled to a 10 percent rating. See DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995), Mitchell v. Shinseki, 25 Vet. App. 32 (2011); VAOPGCPREC 9-98. 

The Veteran asserts that his right knee retropatellar pain syndrome is more disabling that reflected in his current 10 percent rating. The preponderance of the evidence shows his condition more nearly approximates the criteria for a 10 percent rating. 

During the March 2015 VA examination the Veteran indicated he was unable to stand for long periods or walk long distances. He reported that his knee pain also impacted his ability to sit for longer periods of time. He reported using a cane due to knee pain and limping. He reported using oxycodone regularly for pain. The Veteran reported that flareups manifest in decreased mobility. 

Active range of motion testing showed right knee flexion to 110 degrees with pain beginning at 90 degrees and extension to 5 degrees with pain. The Veteran was able to complete repetitive-use testing without additional limitation of motion. The Veteran showed full (5/5) muscle strength with right knee flexion and extension. There was no evidence of instability, patellar subluxation or dislocation. There was also no evidence of a meniscal condition.

During an April 2018 VA examination, the Veteran reported sharp pain with prolonged standing – sitting causes a more gradual increased in achy pain. He reported pain with ascending and descending stairs. He denied swelling and reported an occasional sensation of instability. The Veteran reported daily flare-ups lasting 1 to 8 hours. The Veteran further reported that after walking for more than a quarter mile he develops a limp. 

Range of motion testing showed right knee flexion to 100 degrees and extension to 0. The loss of range of motion contributes to a shuffling gait and instability. There was pain shown with flexion. After repetitive use testing, right knee flexion was further limited to 95 degrees. Passive range of motion testing showed right knee flexion to 115 degrees and extension to 0 degrees. 

Additional factors contributing to disability included disturbance of locomotion, decreased range of motion, and pain with prolonged sitting and standing. The Veteran showed slightly reduced (4/5) muscle strength with right knee flexion and extension. There was no evidence of ankylosis. Joint stability tests were normal and there was no evidence of recurrent patellar dislocation, shin splits, or other tibial of fibular impairment.

The Veteran was afforded an additional VA examination in April 2019. The Veteran reported experiencing extreme pain in all positions in both knees. He reported pain at a severity of 7 out of 10. He denied redness and swelling. Regarding range of motion testing, the examiner noted that the Veteran appeared to display poor and inconsistent effort during the formal physical examination and the range of motion values obtained on formal testing with a goniometer were significantly different than the observed range of motion. The examiner further noted that the Veteran was able to stand with the knees in full extension of 0 degrees. The Veteran was able to sit with the knees in flexion at 90 to 120 degrees. There was no evidence of ankylosis or instability.

For the entire appeal period, the Veteran’s right knee retropatellar pain syndrome more nearly approximates the criteria for a 10 percent rating for painful motion. The Veteran consistently showed flexion limited to no worse than 90 degrees with pain. As the evidence does not show flexion limited to 30 degrees, a 20 percent rating under DC 5260 is not warranted. Thus, a 10 percent rating based on noncompensable motion is warranted. See DeLuca, 8 Vet. App. at 207-08, Mitchell, 25 Vet. App. at 32; VAOPGCPREC 9-98.

The Board has also considered whether a rating in excess of 10 percent is warranted pursuant to an alternate rating code. As the evidence is silent for knee ankylosis, other impairment of the knee, dislocated semilunar cartilage, removal of semi lunar cartilage, compensable limitation of extension, impairment of the tibia and fibula, and genu recurvatum rating pursuant to DCs. 5256, 5257, 5258, 5259, 5260, 5262, and 5263 are not warranted. 

In sum, a rating in excess of 10 percent for right knee retropatellar pain syndrome is not warranted. 

2. Entitlement to a rating in excess of 10 percent for left knee retropatellar pain syndrome with degenerative changes.

The Veteran asserts that his left knee retropatellar pain syndrome is more disabling that reflected in his current 10 percent rating. The preponderance of the evidence shows his condition more nearly approximates the criteria for a 10 percent rating.

During the March 2015 VA examination the Veteran indicated he was unable to stand for long periods or walk long distances. He reported that his knee pain also impacted his ability to sit for longer periods of time. He reported using a cane due to knee pain and limping. He reported using oxycodone regularly for pain. The Veteran reported that flareups manifest in decreased mobility. 

Range of motion testing showed right knee flexion to 80 degrees with pain beginning at 80 degrees and extension to 5 degrees with pain. The Veteran was able to complete repetitive-use testing without additional limitation of motion. The Veteran showed full (5/5) muscle strength with left knee flexion and extension. There was no evidence of instability, patellar subluxation or dislocation. There was also no evidence of a meniscal condition. 

During an April 2018 VA examination, the Veteran reported sharp pain with prolonged standing – sitting causes a more gradual increased in achy pain. He reported pain with ascending and descending stairs. He denied swelling and reported an occasional sensation of instability. The Veteran reported daily flare-ups lasting 1 to 8 hours. The Veteran further reported that after walking for more than a quarter mile he develops a limp. 

Active range of motion testing showed left knee flexion to 95 degrees and extension to 3. The loss of range of motion contributes to a shuffling gait and instability. There was pain shown with flexion. After repetitive use testing, left knee flexion was further limited to 90 degrees. Passive range of motion testing showed left knee flexion to 115 degrees and extension to 0 degrees. 

Additional factors contributing to disability included disturbance of locomotion, decreased range of motion, and pain with prolonged sitting and standing. The Veteran showed slightly reduced (4/5) muscle strength with right knee flexion and extension. There was no evidence of ankylosis. Joint stability tests were normal and there was no evidence of recurrent patellar dislocation, shin splits, or other tibial of fibular impairment. 

The Veteran was afforded an additional VA examination in April 2019. The Veteran reported experiencing extreme pain in all positions in both knees. He reported pain at a severity of 7 out of 10. He denied redness and swelling. Regarding range of motion testing, the examiner noted that the Veteran appeared to display poor and inconsistent effort during the formal physical examination and the range of motion values obtained on formal testing with a goniometer were significantly different than the observed range of motion. The examiner further noted that the Veteran was able to stand with the knees in full extension of 0 degrees. The Veteran was able to sit with the knees in flexion at 90 to 120 degrees. There was no evidence of ankylosis or instability.

For the entire appeal period, the Veteran’s left knee retropatellar pain syndrome more nearly approximates the criteria for a 10 percent rating for painful motion. The Veteran consistently showed flexion limited to no worse than 80 degrees with pain. As the evidence does not show flexion limited to 30 degrees, a 20 percent rating under DC 5260 is not warranted. Thus, a 10 percent rating based on noncompensable motion is warranted. See DeLuca, 8 Vet. App. at 207-08, Mitchell, 25 Vet. App. at 32; VAOPGCPREC 9-98.

The Board has also considered whether a rating in excess of 10 percent is warranted pursuant to an alternate rating code. As the evidence is silent for knee ankylosis, other impairment of the knee, dislocated semilunar cartilage, removal of semi lunar cartilage, compensable limitation of extension, impairment of the tibia and fibula, and genu recurvatum rating pursuant to DCs. 5256, 5257, 5258, 5259, 5260, 5262, and 5263 are not warranted. 

In sum, a rating in excess of 10 percent for left knee retropatellar pain syndrome is not warranted. 

3. Entitlement to a compensable rating for right knee limitation of extension

The Veteran’s right and knee limitation of extension is rated under DC 5261. Under DC 5261, a 10 percent rating applies for extension of the leg limited to 10 degrees. A 20 percent rating applies for extension of the leg limited to 15 degrees. A 30 percent rating applies for extension of the leg limited to 20 degrees. A 40 percent rating applies for extension of the leg limited to 30 degrees and a 50 percent rating applies for extension of the leg limited to 45 degrees.

During the March 2015 VA examination the Veteran showed right knee extension with pain to 5 degrees. During the April 2018 VA examination, the Veteran showed right knee active extension to 0 degrees and passive extension to 0 degrees. In addition, the April 2019 VA examination report indicates that the Veteran was able to stand with straight knees at 0 degrees. 

The Board finds that for the entire appeal period, the Veteran’s right knee limitation of extension more nearly approximates the criteria for a noncompensable rating. The evidence shows that the Veteran’s symptoms manifested in no worse than extension limited to 5 degrees. As extension limited to 10 degrees is not shown, a compensable rating under DC 5261 is not warranted. 

The Board also notes that an additional rating for painful motion based on painful extension of the knee is not permitted because the Veteran is already assigned a compensable rating for his right knee based on painful motion, and it would violate the prohibition against multiple evaluations for the same symptomatology. See 38 C.F.R. § 4.14.

In sum, a compensable rating for limitation of extension of the right knee is not warranted. 

4. Entitlement to a compensable rating for left knee limitation of extension

The Veteran asserts that his left knee limitation of extension is more disabling than reflected in his current noncompensable rating. The Board finds the preponderance of the evidence against the claim. 

During the March 2015 VA examination the Veteran showed left knee extension with pain to 5 degrees. In addition, during the April 2018 VA examination, the Veteran showed left knee active extension to 3 degrees and passive extension to 0 degrees. In addition, the April 2019 VA examination report indicates that the Veteran was able to stand with straight knees at 0 degrees.

The Board finds that for the entire appeal period, the Veteran’s left knee limitation of extension more nearly approximates the criteria for a noncompensable rating. The evidence shows that the Veteran’s symptoms manifested in no worse than extension limited to 5 degrees. As extension limited to 10 degrees is not shown, a compensable rating under DC 5261 is not warranted. 

The Board also notes that an additional rating for painful motion based on painful extension of the knee is not permitted as it would violate the prohibition against multiple evaluations for the same symptomatology. See 38 C.F.R. § 4.14.

In sum, a compensable rating for limitation of extension of the left knee is not warranted. 

5. Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.

The Veteran asserts that his service-connected disabilities make him unable to secure or follow a substantially gainful occupation. 

Schedular TDIU may be assigned when the disabled person is determined to be unable to secure or follow a substantially gainful occupation as a result of service-connected disability or disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16(a). Disabilities resulting from common etiology or a single accident are considered one disability for the purpose of meeting the percentage thresholds for TDIU. Id.

When determining whether the Veteran is unable to secure or follow a substantially gainful occupation due to his service-connected disability, consideration may be given to the Veteran’s level of education, special training, and previous work experience, but it may not be given to his age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

Currently, the Veteran is service connected for a lumbar spine disability evaluated as 40 percent disabling, right knee retropatellar pain syndrome evaluated as 10 percent disabling, left knee retropatellar pain syndrome evaluated as 10 percent disabling, right knee limitation of extension evaluated as noncompensable, and left knee limitation of extension evaluated as noncompensable. The Veteran’s combined rating is 50 percent. 

The Veterans service-connected lumbar spine disability was found to be secondary to service-connected knee disability. As all his service-connected disabilities result from a common etiology, the schedular requirements for TDIU are met. The issue that remains disputed is whether the Veteran was unable to secure or follow a substantially gainful occupation due to his service-connected disabilities. The preponderance of the evidence is in favor of the claim. 

An October 2014 letter from private physician Dr. D.B. indicates the Veteran has tried numerous medications to treat the pain form his service-connected knee and spine disabilities. Dr. D.B. indicated that the Veteran was initially able to continue working while on medication, but his condition continued to deteriorate over time, and he was no longer able to work due to the inability to ambulate significant distances or perform tasks in a timely fashion. Dr. D.B. opined that the Veteran is unemployable due to his chronic medical conditions. 

The March 2015 VA knee examination report indicates the Veteran’s service-connected knee condition impacted his ability to work because he is unable to perform repetitive kneeling, squatting, or crouching. He is also unable to walk up and down steep inclines, stairs, and ladders. 

In November 2016, the Social Security Administration found the Veteran disabled due to his back and knee conditions. In the January 2016 TDIU Application, the Veteran reported he last worked full time in November 2013. He indicated he graduated from high school and completed 3 years of college. He reported he was self-employed and closed his business due to lack of work and because his medical conditions became more disabling and he was unable to complete tasks in a timely manner. His work history consisted of security positions. 

In a January 2016 correspondence, the Veteran reported that from April 2011 to November 2013 he owned a company that did onsite physical security. He reported the job included long hours of standing and walking while wearing approximately 30 pounds of personal equipment including a firearm, body armor, cuffs, and radio. He reported that while working the most he could do for back and knee pain relief was sit for 10 to 15 minutes. He reported he currently spends about 80 percent of his day in bed due to pain. 

During the April 2018 spine examination, the examiner reported that the Veteran is discouraged from walking more than 100 yards continuously, sitting for more than 15 minutes continuously, or carrying more than 10 pounds. 

During the September 2019 Board hearing, the Veteran reported he last worked in November 2013 in security. Worked for a company from 2007 to 2013. He reported some portion of that time in 2011 and 2013 he worked for himself. The Veteran reported having mostly physically demanding jobs since service – some in security, some required driving. He reported that the gear required to do his job usually weighted about 35 to 45 pounds because he wore special ops protection- detail security. He reported he would have to carry a lot of equipment and walk anywhere between a mile to seven miles a day roving properties and other facilities. The Veteran reported it is hard to focus and move around physically. 

The Board finds the evidence sufficient to show that the Veteran is unable to secure or follow a substantially gainful occupation due to his service-connected back and knee disabilities. The evidence shows the Veteran’s work history is comprised of physically demanding work, and the evidence shows that the Veteran’s back and knee pain makes him unable to perform such physical tasks. In addition, the Veteran’s inability to sit for long periods of time and his limited education and experience show that sedentary employment is not a viable option. As such, TDIU is granted. 

6. Entitlement to an effective date prior to December 11, 2014 for the grant of service connection for lumbar strain.

7. Entitlement to an effective date prior to December 11, 2014 for the grant of service connection for right knee limitation of extension.

8. Entitlement to an effective date prior to December 11, 2014 for the grant of service connection for left knee limitation of extension.

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C. § 7105. An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204. Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. In the present case, the Veteran withdrew the effective date claims during the September 2019 Board Hearing. Thus, as to those claims there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeal and it is dismissed.

REASONS FOR REMAND

9. Entitlement to a rating in excess of 20 percent for a lumbar spine disability prior to April 4, 2018 and in excess of 40 percent thereafter.

The Veteran claims entitlement to an increased rating for his lumbar spine condition. The rating schedule provides that associated objective neurologic abnormalities – such as radiculopathy – be rated separately under an appropriate diagnostic code. 38 C.F.R. § 4.71a, DC 5237. Here, the evidence is conflicting as to whether the Veteran has radiculopathy associated with his lumbar condition. 

The March 2015 VA spine examination was negative for radiculopathy. A January 2017 EMG indicated there was no evidence of lumbosacral radiculopathy. However, a September 2017 VA treatment note indicates the Veteran reporting pain radiating down the legs present for 5 to 7 years. 

In January 2018, a VA medical service provider noted, “Interesting, despite [the Veteran’s] clinical picture of radiculopathy, his straight leg raise is negative today and recent EMG was negative for evidence of radiculopathy.” In addition, the April 2018 VA spine examination was negative for radiculopathy. Yet, a May 2018 VA treatment note lists “lumbar radiculopathy” as an active problem. As such, remand for a peripheral nerve examination to determine whether the Veteran has a neurological condition associated with his lumbar disability and to what degree. 

The matters are REMANDED for the following action:

(Continued on the next page)

 

Arrange for the Veteran to undergo a VA neurological examination to determine the current nature and severity of any neurological condition related to his service-connected lumbar disability. The examiner must address the conflicting medical evidence as to whether the Veteran has a diagnosis of radiculopathy.

 

 

R. FEINBERG

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J.A. Williams, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.